[No. S084616. Apr. 5, 2001.]

RUSSELL GLEN DAY, Plaintiff and Appellant, v.
CITY OF FONTANA et al., Defendants and Respondents.

## COUNSEL

Law Offices of Wayne McClean, Wayne McClean; Evan D. Marshall; Law Offices of J. Russsell Brown, Jr., and Kevin Campbell for Plaintiff and Appellant.

Miles, Sears & Eanni, Richard C. Watters, William J. Seiler and Douglas L. Gordon for Michael G. Waski and Eileen Waski as Amici Curiae on behalf of Plaintiff and Appellant.

Law Offices of Michael J. Piuze, Michael J. Piuze and John Keiser for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Kent L. Richland, Dana Gardner Adelstein; Rinos, Shephard & Martin and Dimitrios C. Rinos for Defendant and Respondent City of Fontana.

Alan K. Marks, County Counsel, and Dennis E. Wagner, Deputy County Counsel, for Defendant and Respondent County of San Bernardino.

Law Offices of Carpenter & Rothans, Louis R. Dumont, Marc P. Miles; Ronald R. Ball, City Attorney (Carlsbad); John L. Cook, City Attorney (Indian Wells); Dave Larsen, Town Attorney (Loomis); William B. Conners, City Attorney (Monterey); Daniel J. McHugh, City Attorney (Redlands); Gregory P. Priamos, Deputy City Attorney (Riverside); Samuel L. Jackson, City Attorney (Sacramento); Jeffrey G. Jorgensen, City Attorney (San Luis Obispo); Phillip H. Romney, City Attorney (Santa Paula); Debra E. Corbett, City Attorney (Tracy); and Paul M. Valle-Riestra, Assistant City Attorney (Walnut Creek), for California State Association of Counties and 13 California Cities as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BAXTER, J.**—Section 3333.4 of the Civil Code (all further statutory references are to this code unless otherwise indicated) limits the ability of uninsured motorists and convicted drunk drivers to recover losses suffered in certain accidents. The question presented is whether the statute precludes an uninsured motorcyclist injured in a vehicular accident from recovering an award of noneconomic damages against a county and a municipality in an action for nuisance and dangerous condition of public property. Application of settled statutory construction principles leads us to conclude the answer is yes.

### FACTUAL AND PROCEDURAL BACKGROUND

Russell Glen Day was driving his motorcycle when a car driven by William Honda struck him in an intersection. Day then filed this action against Honda, Irving Schwartz (the owner of the property adjacent to the intersection), the County of San Bernardino (the County), and the City of Fontana (the City). As against the public entity defendants, plaintiff alleged two theories of recovery. In his cause of action for dangerous condition of public property, plaintiff alleged that the County and the City created or had actual or constructive notice of overgrown vegetation on public and private property surrounding the intersection, and that such vegetation created a vision obstruction for motorists traveling through the intersection. In his nuisance cause of action, plaintiff alleged that the public entities maintained a nuisance on their property by failing to correct, remove, reduce, or warn of the vision obstruction caused by the overgrown vegetation.

At the time of the accident, plaintiff did not have liability insurance on his motorcycle as required by state law. Discovery of that fact prompted the

County and the City to file a motion to exclude from trial any evidence of damages for pain and suffering. The trial court granted the motion, finding plaintiff's action subject to the restrictions of section 3333.4.

Plaintiff dismissed his action against Schwartz prior to trial. At trial, a jury determined that plaintiff was not at fault in the accident. The jury awarded him $454,574.21 in economic damages and allocated responsibility for those damages between Honda (52 percent), the County (5 percent), and the City (43 percent). The trial court entered judgment accordingly.

The Court of Appeal affirmed, rejecting plaintiff's arguments that section 3333.4 is inapplicable to actions for nuisance and dangerous condition of public property, that the statute is unconstitutional, and that retroactive application of the statute to his case violated due process. We granted plaintiff's petition for review, limiting our review to the first issue noted.

## DISCUSSION

Does section 3333.4 restrict an uninsured driver's recovery of noneconomic damages against local public entities in an action for nuisance and dangerous condition of property? The issue is one of statutory construction.

Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777 [63 Cal.Rptr.2d 859, 937 P.2d 290].) We begin by examining the statutory language, giving the words their usual and ordinary meaning. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230 [99 Cal.Rptr.2d 570, 6 P.3d 228].) If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Id.* at pp. 230-231; *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*People v. Coronado, supra*, 12 Cal.4th at p. 151.) In such circumstances, we " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*; see *Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223 [60 Cal.Rptr.2d 722, 930 P.2d 979].) These rules apply equally in construing statutes enacted through the initiative process. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].)

As relevant here, section 3333.4 provides: "(a) Except as provided in subdivision (c) [dealing with convicted drunk drivers], in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] . . . [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state."[1]

We have construed section 3333.4 twice in the recent past. In *Horwich v. Superior Court, supra*, 21 Cal.4th 272, we held the statute did not preclude recovery of damages for loss of care, comfort, and society by a wrongful death plaintiff whose decedent was the uninsured operator of a motor vehicle involved in an accident. In *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433] (*Hodges*), we found it did not limit recovery by an uninsured motorist in a products liability action against a car manufacturer. In both instances, we found the relevant statutory language was "not pellucid" with respect to the particular factual circumstances. (*Horwich v. Superior Court, supra*, 21 Cal.4th at p. 277; *Hodges, supra*, 21 Cal.4th at p. 113.) That is, in *Horwich v. Superior Court, supra*, 21 Cal.4th 272, recovery of noneconomic damages was sought by "a person" who was not the uninsured owner or operator of the vehicle involved in an accident. And in *Hodges, supra*, 21 Cal.4th 109, there was no necessary connection between the plaintiff's injury and "the operation or use" of the vehicle. We therefore considered the Legislative Analyst's analysis and other legislative history materials for clues as to the statute's intended goals and then construed the language to give effect to the apparent intent of the lawmakers.

■■■ In contrast to the factual scenarios presented in those previous decisions, the instant action against the public entity defendants appears to fall squarely within the terms of section 3333.4. First, plaintiff was the owner of an uninsured motorcycle. (§ 3333.4, subd. (a)(2).) Second, plaintiff's action for nuisance and dangerous condition of public property seeks "to recover damages arising out of the operation or use of [that] motor vehicle." (*Id.,* subd. (a).) On this last point, we note the facts here are neither

---

[1]Section 3333.4 also bars recovery of noneconomic losses if the injured person was driving under the influence of drugs or alcohol at the time of the accident and was convicted of that offense (*id.,* subd. (a)(1)) or if the injured person was the operator of a vehicle involved in the accident and cannot establish his or her financial responsibility as required by state law (*id.,* subd. (a)(3)). The statute provides an exception whereby the owner of an uninsured vehicle may recover noneconomic losses if he or she was injured by a motorist who was driving under the influence of drugs or alcohol and was convicted of that offense. (*Id.,* subd. (c).)

parallel nor analogous to those giving rise to the perceived ambiguity in *Hodges, supra,* 21 Cal.4th 109, for here there was a necessary and causal relationship between the plaintiff's operation of his motorcycle and the accident for which he claimed the public entities were responsible. Since section 3333.4 contains no exception for suits against public entities,[2] plaintiff appears statutorily barred from recovering noneconomic damages against the County and the City.

Although we might well stop here since the facts do not appear to raise any ambiguity or uncertainty as to the statute's application, we shall, "in an abundance of caution, . . . test our construction against those extrinsic aids that bear on the enactors' intent." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 93 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) As we shall demonstrate, the legislative history materials reinforce our conclusion that the statute applies to plaintiff's action.

Section 3333.4 was enacted through passage of Proposition 213 in the November 5, 1996 General Election. Denominated and publicized as the Personal Responsibility Act of 1996, Proposition 213 sought to restrict the ability of uninsured motorists, convicted drunk drivers and convicted felons to sue for losses suffered in accidents. Because it bears directly on the issue of legislative intent, we review the proposition's "Findings and Declaration of Purpose." That declaration states in full:

"(a) Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. Uninsured motorists, drunk drivers, and criminal felons are law breakers, and should not be rewarded for their irresponsibility and law breaking. However, under current laws, uninsured motorists and drunk drivers are able to recover unreasonable damages from law-abiding citizens as a result of drunk driving and other accidents, and

---

[2]Although section 3333.4 does not specifically state that it applies in actions against public entities, it explicitly restricts the right of uninsured motorists and convicted drunk drivers to recover noneconomic damages "*in any action* to recover damages arising out of the operation or use of a motor vehicle" (§ 3333.4, subd. (a), italics added), subject to only one exception that is not implicated here (*id.*, subd. (c) [owners of uninsured vehicles who are injured by drunk drivers]). The ballot materials accompanying Proposition 213 also discussed the point. Notably, the Legislative Analyst informed voters in its analysis that "[u]nder existing law, someone who has suffered an injury in a car accident may sue the person, business, or government at fault for the injury in order to recover related losses." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) analysis of Prop. 213 by Legis. Analyst, p. 49.) After explaining to voters that the proposition would restrict the ability of uninsured motorists and convicted drunk drivers to sue for noneconomic losses such as pain and suffering that resulted from car accidents, the Legislative Analyst opined that such restrictions would "result in fewer lawsuits filed against state and local governments." (*Ibid.*) The analysis also projected "there would be an unknown savings to state and local governments as a result of avoiding these lawsuits." (*Ibid.*)

criminals have been able to recover damages from law-abiding citizens for injuries suffered during the commission of their crimes.

"(b) Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from seeking unreasonable damages or from suing law-abiding citizens.

"(c) Therefore, the People of the State of California do hereby enact this measure to restore balance to our justice system by limiting the right to sue of criminals, drunk drivers, and uninsured motorists." (Ballot Pamp., Gen. Elec., *supra*, text of Prop. 213, § 2, p. 102 (Ballot Pamphlet).)

In proposing to deny recovery of noneconomic losses to injured motor vehicle owners or drivers who operate or use vehicles that are "not insured as required by the financial responsibility laws of this state" (§ 3333.4, subd. (a)(2) & (3)), Proposition 213 sought to "restore balance to our justice system" by ensuring that those "who fail to take essential personal responsibility" would "not be rewarded for their irresponsibility and law breaking" (Ballot Pamp., *supra*, text of Prop. 213, § 2, p. 102). Mindful of the express terms of section 3333.4, we now examine whether the statute's application in actions such as the instant one would undermine the initiative's declared purpose or otherwise lead to absurd results.

It is beyond dispute that the financial responsibility law requires owners and operators of motor vehicles " 'to be "financially responsible" (usually by means of insurance) for any' bodily injury or property damage that they may cause. [Citation.] Its purpose—at least its *primary* purpose—is to assure compensation for persons who have suffered injury or damage of this sort. [Citations.]" (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 341 [79 Cal.Rptr.2d 308, 965 P.2d 1178].) Stated another way, the financial responsibility law is intended to ensure that the victims of negligent drivers are compensated not only for bodily injury and property damage occasioned by accidents occurring on public streets and highways, but also for vehicular accidents resulting in "damage to 'vehicles, buildings, or other property located on public and private property off the streets and highways.' " (*Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 496 [39 Cal.Rptr.2d 348], quoting Stats. 1989, ch. 808, § 1, p. 2675, italics omitted.)

Public entities, many of which provide the transportation infrastructure for the motoring public, are among those directly affected by motorists who violate the financial responsibility law. For example, when an uninsured driver causes damage to roadways or to other public property on or adjacent to the roadways, including traffic signs, directional signs, traffic signals,

street lights, median strips, and landscaping, the public entity suffers a direct harm and public safety may sometimes be placed at risk until repairs to the property are made. In such situations, the public entity generally is left to bear the entire cost of the repairs necessitated by the uninsured tortfeasor's acts and financial irresponsibility.

Violators of the financial responsibility law also detrimentally affect the interests of public entities in a more indirect way. When the negligence of an uninsured driver and the dangerous condition of public property combine to jointly cause injury to an insured driver, both tortfeasors are jointly and severally liable for all economic damages awarded to the insured driver. (See *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 527 [66 Cal.Rptr.2d 438, 941 P.2d 71].) Typically, however, the public entity's right of contribution (Code Civ. Proc., § 875) from the uninsured tortfeasor is meaningless because the tortfeasor is judgment proof. In such circumstances, the public entity ends up paying all of the insured driver's economic damages while the uninsured driver pays nothing.

In light of the foregoing, we are confident that our construction of section 3333.4 promotes, rather than defeats, its general purpose. (*People v. Coronado, supra,* 12 Cal.4th at p. 151.) By reading section 3333.4 as including within its scope actions such as the instant one, public entities are relieved of any liability for an uninsured driver's noneconomic losses but would remain legally responsible to pay for any economic losses. This construction advances Proposition 213's declared purpose to "change the system that rewards individuals who fail to take essential personal responsibility" and to "restore balance to our justice system." (Ballot Pamp., *supra,* text of Prop. 213, § 2, subds. (b), (c), p. 102.) Moreover, in no way does it lead to absurd results.

Conversely, were we to construe the statute as being inapplicable in an action against a public entity based upon property-related theories of liability such as nuisance and dangerous condition of property, such an entity would remain legally responsible to compensate an uninsured driver for both economic and noneconomic losses arising out of vehicular accidents involving its property, while the uninsured driver could continue avoiding *any* responsibility for his or her fault in damaging such property and injuring third parties. Such a construction would appear to perpetuate a system of one-sided recovery favoring the uninsured driver at the expense of the law-abiding entity, thus undermining the initiative's goal to prevent such drivers from being "rewarded for their irresponsibility and law breaking." (Ballot Pamp., *supra,* text of Prop. 213, § 2, subd. (a), p. 102.)

Accordingly, section 3333.4 is properly construed as restricting an uninsured motorist's ability to recover noneconomic damages in actions against

public entities alleging nuisance and dangerous condition of property. Not only does the language of section 3333.4, subdivision (a) encompass such actions within its literal scope ("any action to recover damages arising out of the operation or use of a motor vehicle"), but construing the statute to have such application comports most closely with the initiative's declared intent to "restore balance to our justice system" by barring people who "fail to take essential personal responsibility" from "seeking unreasonable damages or from suing law-abiding citizens." (Ballot Pamp., *supra*, text of Prop. 213, § 2, subds. (b), (c), p. 102.) Neither the language nor the purpose of the statute provides a basis for implying a statutory exemption that would preserve a system whereby uninsured drivers may recover *fully* for losses caused by public road and roadside conditions while at the same time evading financial responsibility for their own negligence in damaging public roadways and improvements[3] and injuring third persons.

Although plaintiff generally agrees that section 3333.4 may apply in actions against public entities, he maintains the statute is intended to inure solely to the benefit of individuals and entities whose automobile insurance policies are implicated in the lawsuit. Under this view, recovery against a public entity is not statutorily restricted unless its liability stems from a public employee's or agent's operation of a motor vehicle. To support this narrower construction of the statute, plaintiff relies upon subdivision (b) of section 3333.4, the ballot arguments accompanying Proposition 213, and *Hodges, supra*, 21 Cal.4th 109. We are not convinced.

As relevant here, subdivision (b) of section 3333.4 states that "an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses" of an injured uninsured motorist. According to plaintiff, one may reasonably infer that section 3333.4 applies solely to actions involving accidents between motorists because subdivision (b) purports to curtail only the liability of a defendant's automobile insurer, not any other type of insurer. Plaintiff is wrong.

On its face, the statutory subdivision expressly refers to an insurer that might otherwise be liable for indemnification of noneconomic losses under

---

[3]Amicus curiae Consumer Attorneys of California suggests that section 3333.4 is not needed to achieve balance or fairness where a negligent uninsured motorist causes damage to property belonging to a public entity because the entity is allowed a setoff therefor against any judgment obtained by the uninsured motorist. As defendants point out, however, setoffs generally offer no protection to a public entity unless both sides share liability for an accident that results in losses to them both. Furthermore, setoffs appear to fall short of the "balance" contemplated by Proposition 213 because they are also available in actions clearly subject to section 3333.4, e.g., actions by negligent uninsured motorists against negligent insured motorists.

"a policy of liability *or* uninsured motorist insurance." (§ 3333.4, subd. (b), italics added.) Although a policy of liability insurance may be embraced within an automobile insurance policy (see Black's Law Dict. (4th ed. 1951) p. 943 [definition of "Insurance," "Automobile insurance" classification]), liability insurance policies are often issued to cover the liability of nonmotorists and are not associated exclusively with automobile insurance.[4] If anything, the fact that section 3333.4, subdivision (b) employs the term "liability" insurance, instead of a more qualified term such as "automobile" insurance or "automobile liability" insurance, undercuts the notion that the statute pertains solely to accidents between insured and uninsured motorists.

Plaintiff next relies on the fact that the ballot arguments accompanying Proposition 213 make reference to stopping uninsured motorists from going after "big" noneconomic damages awards *"when these lawbreakers are in an accident with an insured driver."* (Ballot Pamp., *supra*, rebuttal to argument against Prop. 213, p. 51, original italics; see also *id.*, Brief Summary of the Measures, p. 7 ["A *yes* vote on this measure means: . . . uninsured motorists involved in collisions . . . would be prohibited from recovering 'pain and suffering' awards from insured drivers"].)

The ballot arguments do not compel plaintiff's construction of the statute. Such arguments, of course, "are not legal briefs and are not expected to cite every case the proposition may affect." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 237 [45 Cal.Rptr.2d 207, 902 P.2d 225]; see also *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 802-803 [268 Cal.Rptr. 753, 789 P.2d 934] ["The most reasonable inference is that the proponents chose to emphasize (in the limited space available for ballot arguments) what they perceived as the greatest need"].) Here we may reasonably infer from the ballot arguments that a *primary* aim of Proposition

---

[4]The fourth edition of Black's Law Dictionary lists liability insurance and automobile insurance as two distinct classifications of insurance. (See Black's Law Dict., *supra*, at pp. 943, 944.) With regard to the former, the law dictionary states: "Liability insurance is that form of insurance which indemnifies against liability on account of injuries to the person or property of another. It is distinguished from 'indemnity insurance' (see that title, *supra*), and may be issued to cover the liability of, for example, carriers, contractors, employers, landlords, manufacturers, owners, and railroads. Liability insurance may extend to automobiles, elevators, fly wheels, libel, theaters, and vessels. [Citation.]" (*Id.* at p. 944 ["Liability insurance"]; see also Black's Law Dict. (7th ed. 1999) pp. 803 ["automobile insurance"], 806 ["liability insurance"]; Webster's New Internat. Dict. (3d ed. 1981) p. 1302 [defining "liability insurance" as "insurance against loss resulting from liability for injury or damage to the persons or property of others"]; *id.* at p. 148 [defining "automobile liability insurance" more specifically as "insurance against loss from or legal liability for damages arising out of ownership, maintenance, or operation of a motor vehicle" and "automobile insurance" as "insurance against loss arising from destruction of or damage to an insured motor vehicle"]; Ins. Code, § 108 [defining "[l]iability insurance" generally and without limiting the term to insurance against losses caused by motor vehicles].)

213 was to protect insured motorists and to reduce automobile insurance rates. (See *Hodges, supra,* 21 Cal.4th at p. 116.) Such arguments, however, did not imply that protection of insured motorists was the initiative's *sole* aim; nor did they suggest that reductions in automobile insurance premiums would be the initiative's *only* effect. Rather, the express language and declared purpose of the enactment, as well as the ballot arguments' broader focus upon the perceived need to reform a system that had rewarded lawbreakers at the expense of responsible, law-abiding citizens,[5] persuade us that actions such as the instant one fall within a fair and objective reading of section 3333.4. (See *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 308 [58 Cal.Rptr.2d 855, 926 P.2d 1042] [refusing to limit the scope of an initiative measure based upon the Legislative Analyst's analysis]; *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243 [48 Cal.Rptr.2d 12, 906 P.2d 1112] [Proposition 103 applied to surety insurance even though the ballot materials had not specifically told voters of that application]; cf. *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 732-733 [80 Cal.Rptr.2d 506, 968 P.2d 65] [rejecting argument that Legislature's focus on negligence principles supported a limitation of section 847's immunity provisions to negligent acts].)

With respect to *Hodges,* our analysis in that case specifically focused on whether section 3333.4 restricted the ability of an uninsured driver to recover against a car manufacturer in a products liability action. Although

---

[5]In calling upon voters to "fix a system that rewards people who break the law," supporters of Proposition 213 emphasized that "people who break the law should not be rewarded, while law abiding citizens pick up the tab." (Ballot Pamp., *supra,* argument in favor of Prop. 213, p. 50, original punctuation, capitalization omitted.) Noting that "[l]aw-abiding citizens already pay higher insurance premiums to cover uninsured motorists," they argued that "[i]llegal behavior [such as driving without insurance] shouldn't be rewarded" and that "[p]eople who break the law must be held accountable for their actions." (*Ibid.,* italics omitted.) According to its supporters, the proposition would restore fairness by preventing uninsured motorists from recovering "huge monetary awards" for pain and suffering, while still allowing them "medical and out-of-pocket expenses." (*Ibid.,* italics omitted.) They also claimed the initiative would make "insurance more affordable for everyone." (*Id.,* rebuttal to argument against Prop. 213, p. 51, capitalization omitted.)

Conversely, in urging defeat of the proposition, opponents told voters that the measure was sponsored by then Insurance Commissioner Charles Quackenbush and that Quackenbush had received over $1 million from insurance companies. (Ballot Pamp., *supra,* rebuttal to argument in favor of Prop. 213, p. 50.) They emphasized it would legalize no-fault automobile insurance in California, despite the fact that two-thirds of California's voters had rejected a previous no-fault initiative measure earlier that year, and that insurance companies would simply boost their profits to excessive levels without corresponding insurance premium rate reductions or savings for consumers. (*Id.,* argument against Prop. 213, p. 51.) Opponents also argued that the proposition would allow "reckless drivers to avoid responsibility for their actions," that "[t]he high cost of insurance makes it impossible for many poor and working people to buy insurance," and that "it is completely unfair to deny people full compensation for a car accident that is not even their fault." (*Ibid.*)

we recognized the statute could perhaps be read as extending to products liability actions (see *Hodges, supra,* 21 Cal.4th at p. 118), our review of the initiative measure and the accompanying ballot materials convinced us it was not intended to have such a broad reach. As we observed, "[t]he electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative. The right to recover fully for an injury caused by a design defect, even by an uninsured motorist, has no bearing on any principle of fairness having to do with the financial responsibility laws. It is not clear that *anyone*—either the sponsors of the measure or the voters—intended to protect from products liability claims manufacturers who do not contribute to that pool and whose other insurance rates are not affected by the existence of uninsured motorists." (*Id.* at p. 115.) Neither the statutory language nor the ballot materials, we concluded, reflected any intent "to reform a system 'unfair' to law-abiding insured motorists by providing a windfall to manufacturers of defective vehicles." (*Id.* at p. 118, fn. omitted.)

 ▆▆ Contrary to the assertions of both plaintiff and the dissent, our observations in *Hodges* do not support a similar conclusion here. To begin with, *Hodges* merely posited that a *primary* aim of Proposition 213 was to limit automobile insurance claims by uninsured motorists. (*Hodges, supra,* 21 Cal.4th at p. 115.) Like the ballot arguments, our decision did not suggest it was the initiative's *exclusive* aim. More to the point, section 3333.4's applicability in this case flows directly from the terms of the statute, which precludes recovery of noneconomic damages "in any action . . . arising out of the operation or use of a motor vehicle" (*id.,* subd. (a)) if "[t]he injured person was the owner of a vehicle involved in the accident and the vehicle was not insured . . ." (*id.,* subd. (a)(2)).

Additionally, in contrast to the situation involving automobile manufacturers, the question of whether an uninsured motorist should be allowed to recover fully for a vehicular accident caused in part by a condition of public property bears directly on a "principle of fairness having to do with the financial responsibility laws."[6] (*Hodges, supra,* 21 Cal.4th at p. 115.) As noted, the financial responsibility law was enacted to ensure that victims of negligent drivers receive compensation for damage both to their persons and to their property. (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 341; *Campbell v. Zolin, supra,* 33 Cal.App.4th at pp. 495-496.) Motorists

---

[6]*Hodges* specifically refrained from addressing section 3333.4's application in actions "against state and local governments, e.g., for defective road design," for the reason that "such matters may implicate concerns distinct from products liability actions against automobile manufacturers." (*Hodges, supra,* 21 Cal.4th at p. 116, fn. 5.)

who drive in violation of that law and negligently cause damage to roadways and other public property, however, typically fail to compensate for the damage; in such circumstances, public entities wind up paying for repairs to their property while the uninsured tortfeasors escape responsibility for their actions. To pose Proposition 213's declaration of purpose as a question, should such motorists be "rewarded for their irresponsibility and law breaking" (Ballot Pamp., *supra*, text of Prop. 213, § 2, subd. (a), p. 102) when they, in turn, seek to recover for injuries caused by conditions of public property? The answer we discern is no. Nothing in the language of the initiative or in the ballot materials indicates that the electorate intended to forgo "balance" (*ibid.*) for public entities whose interests are placed directly at risk by motorists who fail to comply with the financial responsibility law.

As plaintiff correctly notes, *Hodges* observed that neither Proposition 213's sponsors nor the voters intended to protect from products liability claims manufacturers whose insurance rates are "not affected by the existence of uninsured motorists." (*Hodges, supra*, 21 Cal.4th at p. 115.) Contrary to plaintiff's suggestion, however, that observation should not be read to suggest that insurance costs, whether automobile-related or otherwise, must necessarily be affected for section 3333.4 to apply.

Section 3333.4, of course, makes no mention of insurance costs as a consideration in its application in an action. It does, however, clearly limit recovery to injured persons whose vehicles are "not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).) While *Hodges* placed emphasis on the absence of any effect on the particular defendant's insurance costs, it must be remembered that the defendant there, in its capacity as a car manufacturer, faced no potential of direct harm to itself or its property from uninsured drivers who failed to comply with the state financial responsibility law. In that case, the consideration that car manufacturers also had no insurance rates affected by the existence of uninsured motorists was significant to our conclusion that manufacturers of defective cars were not among those whom the initiative was intended to protect.[7] Here, however, the situation is otherwise and the public entity defendants are being sued in a capacity that directly implicates a "principle

---

[7]As discussed, a portion of the ballot arguments told voters that "[l]aw-abiding citizens already pay higher insurance premiums to cover uninsured motorists" (Ballot Pamp., *supra*, argument in favor of Prop. 213, p. 50) and that Proposition 213 would benefit consumers "by making insurance more affordable for everyone" (Ballot Pamp., *supra*, rebuttal to argument against Prop. 213, p. 51, capitalization omitted).

Although the initiative's declaration of purpose included a finding that "[i]nsurance costs have skyrocketed for those Californians who have taken responsibility for their actions" (Ballot Pamp., *supra*, text of Prop. 213, § 2, subd. (a), p. 102), it makes little sense to read that finding as limiting the protective scope of the initiative. Were we to view that finding as

of fairness having to do with the financial responsibility laws." (*Hodges, supra*, 21 Cal.4th at p. 115.) In circumstances such as these, insurance cost considerations provide no basis for negating section 3333.4's application.

Finally, plaintiff argues the legislative materials "reflect no intent to overturn well-established legal policies governing liability for dangerous real property or for nuisances interfering with safe use of public roads." He also claims there is no indication that Proposition 213 was intended to alter the special statutory scheme governing liability for dangerous condition of public property (Gov. Code, §§ 830, 835), or other public liability not based on a defendant's negligent operation of a vehicle. We disagree.

By approving the Personal Responsibility Act of 1996, the voters expressed their collective intent to legislatively overturn existing law and policy determinations regarding the right of motorists to recover noneconomic damages arising out of their operation or use of uninsured motor vehicles. (§ 3333.4, subd. (a).) As discussed, it is of no consequence here that the ballot materials did not specifically refer to the act's application in actions against local public entities for nuisance and dangerous condition of property. Such actions fall squarely within the terms of section 3333.4, and the statute's operation in such cases promotes rather than defeats the declared purpose of Proposition 213 to restore balance to the justice system with respect to violators of the financial responsibility law. No more was required.[8]

### DISPOSITION

Both the language and the purpose of section 3333.4 support a construction that precludes uninsured drivers from recovering noneconomic damages in actions against local public entities for nuisance and dangerous condition of property. We therefore affirm the judgment of the Court of Appeal.

George, C. J., Werdegar, J., Chin, J., and Brown, J., concurred.

restricting the initiative's application, we would be compelled to conclude that both section 3333.4 and section 3333.3 (another statute enacted through passage of Proposition 213) would apply only in actions against "Californians" (and perhaps "citizens") and in actions where insurance costs previously had "skyrocketed" due to the conduct at issue.

[8]Plaintiff additionally argues that section 3333.4 is inapplicable in premises liability actions against private property owners and that application of section 3333.4 in actions such as this would impermissibly exempt public entities from liability for noneconomic damages in circumstances where a private property owner would be liable. Because the instant action does not involve the liability of a private property owner, we need not and do not address such arguments or the possibility that other concerns may justify a different result in the case of such owners.

**MOSK, J.**—I dissent.

The majority broadly extend the scope of Civil Code section 3333.4, which limits automobile insurance claims by uninsured motorists, to this claim *not against an insured driver* but against public entities responsible for failing to safely maintain a public roadway. I disagree. The voters who passed Proposition 213, thereby enacting Civil Code section 3333.4, did not intend to limit damages for injuries to motorists based on a dangerous condition of property or nuisance.

As we emphasized in *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433]: "In the case of a voters' initiative statute . . . we may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." Consistent with the purpose of Proposition 213, Russell Glen Day, whose motorcycle was hit by a car because the City of Fontana and County of San Bernardino (hereafter the city and county) failed to correct or warn of an obstruction blocking the motorists' view in a public intersection, should be permitted to seek recovery of damages against the city and county for noneconomic as well as economic damages.

I

In September 1991, Day, then 19 years old, suffered devastating injuries when his motorcycle was struck by a car in an intersection; the accident was the result of the configuration of the intersection and obstructions seriously limiting visibility. The motorcycle was not insured. Day commenced this action in August 1992, including a claim against the city and county for a dangerous condition of public property and nuisance.

Although the case was classified as a fast track action, it was not called for trial until May 1997; by then, Civil Code section 3333.4, enacted as part of the Personal Responsibility Act of 1996, had gone into effect. The city and county successfully moved to exclude all evidence or recovery of noneconomic damages under the provision. The jury found no fault on the part of Day, allocating responsibility for the accident about equally between the driver of the car and the city and county. The court entered a judgment for economic damages only, which the Court of Appeal affirmed.

II

Civil Code section 3333.4 provides, in relevant part: "[I]n any action to recover damages arising out of the operation or use of a motor vehicle, a

person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if . . . [¶] . . . [¶] . . . [t]he injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility, as required by the financial responsibility laws of this state." (*Id.*, subd. (a)(3).)

In *Hodges v. Superior Court, supra,* 21 Cal.4th 109, we looked beyond the literal words of the provision, which we concluded were "not pellucid" (*id.* at p. 113; see also *id.* at p. 119 (conc. opn. of Werdegar, J.) [referring to "this poorly drafted, ambiguous statute"]), to discern the voters' purpose, as indicated in the ballot arguments and elsewhere. We explained: "It seems clear that a primary aim of Proposition 213 . . . was to limit *automobile insurance claims* by uninsured motorists. The electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative. . . . [¶] Proposition 213's statement of legislative purpose supports this view, identifying the principal intended beneficiaries of the measure as Californians who obey the financial responsibility laws." (*Id.* at p. 115.) The ballot materials for the measure specify the purpose of " 'restor[ing] balance to our justice system.' " (*Ibid.*) As *Hodges* made clear: "With regard to uninsured motorists, the 'system' in need of change in order to 'restore balance to our justice system' is the one that permits those who do not contribute to the insurance pool—and thereby drive up the costs of premiums for automobile insurance—to reap the benefits of coverage paid for by law-abiding motorists. . . . Moreover, use of the words 'Californians' and 'law-abiding citizens' indicates that the initiative was aimed principally at providing balance *for those who obey the financial responsibility laws* . . . ." (*Ibid.*)

*Hodges* concluded that Proposition 213 "was primarily intended to limit awards against insured drivers." (*Hodges v. Superior Court, supra,* 21 Cal.4th at p. 116.) Thus, the ballot arguments, "considered as a whole, . . . indicate that voters were being urged to distinguish between law-abiding motorists who pay for liability insurance, on the one hand, and law-breaking uninsured motorists who refuse to pay for such insurance on the other. By limiting the amount of damages available to uninsured motorists, the law-abiding motorists would receive some savings in the form of reduced premiums. The arguments for and against the measure refer principally to remedying an imbalance in the justice system that resulted in unfairness when an accident occurred *between two motorists*—one insured and the other not." (*Ibid.*) The stated purposes of the statute of "punishing illegal behavior and encouraging personal responsibility are emphatically directed at 'reform[ing] an unfair

system' with respect to law-abiding drivers who 'pick up the tab'—i.e., those who 'play by the rules' and 'take personal responsibility' [citation] but have been required to 'pay additional premiums to protect themselves from uninsured drivers.' " (*Id.* at p. 117.)

We thus determined in *Hodges* that Civil Code section 3333.4 was intended to resolve inequities involving the allocation of costs *between motorists who carry automobile liability insurance and motorists who do not.* The former—scofflaw uninsured motorists—are held accountable as both a punishment and incentive; the latter—motorists who obey the financial responsibility laws—are the beneficiaries. We found nothing in the ballot materials suggesting "that such punishment or incentive was also intended—or should be permitted—to benefit" other defendants "not reasonably included among 'those who play by the rules' or 'take personal responsibility' or 'pick up the tab' for the 'skyrocket[ing]' costs of automobile insurance." (*Hodges v. Superior Court, supra,* 21 Cal.4th at p. 117.) *Hodges* itself involved a products liability claim against the manufacturer of the car. In the absence of a clear expression of voter intent, we declined to adopt "a broad literal interpretation of the initiative" that would limit damages in such a claim, emphasizing that to do so would raise " 'substantial policy concerns.' " (*Id.* at p. 118.)

In my view, it follows ineluctably from our analysis in *Hodges* that the liability at issue in this case—based on the dangerous condition of public property and nuisance—does not fall within the purview of Civil Code section 3333.4. The city and county, which failed to maintain safe roadways and which did not contribute to the relevant insurance pool, are not reasonably numbered among those who "play by the rules" or "take personal responsibility" or "pick up the tab" for skyrocketing automobile insurance costs. When a claim for injury is based on a defective or dangerous condition of property, as opposed to negligence by an insured driver, applying the statute does nothing to advance the voters' intent under Proposition 213. The ballot materials do not indicate that Proposition 213 intended to change the "system" with regard to a public entity's liability for nuisance or dangerous conditions of property—or suggest that any such change is needed.

Moreover, as in the case of the products liability claim in *Hodges*, broad literal application of the provision to this case against the city and county for failure to remedy an unsafe condition in a public intersection raises obvious and substantial policy concerns. Compensating the victims of injuries caused by unsafe design or maintenance of public streets for pain and suffering operates as a strong incentive for cities and counties to prevent or abate dangerous conditions, thus minimizing risks to the public. It also serves the

important social goal of compensating injured persons for damages caused by the negligent acts of public entities. The majority's broad application of Civil Code section 3333.4, by relieving cities and counties of liability for all damages caused by their negligence, will erode public policy aimed at securing the safety of *all* motorists.

Nor is there any indication in the legislative history of Proposition 213 that it was intended to alter the special statutory provisions regarding tort claims against public entities. Government Code section 835, a provision of the Tort Claims Act, expressly makes a public entity liable for injury caused by a dangerous condition of property.[1] There is no mention whatever, either in Civil Code section 3333.4 or in the ballot materials regarding Proposition 213, of limiting governmental liability in dangerous condition cases. Unlike the majority, I disagree that the carefully tailored provisions of the Tort Claims Act may be modified by implication. Nor do I discern any justification for providing a windfall to the public entities responsible for failing to keep their roadways safe for motorists.

For these reasons, I would reverse the judgment of the Court of Appeal.

Kennard, J., concurred.

---

[1]Government Code section 835 provides, in pertinent part, that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred" and the public entity "had actual or constructive notice of the dangerous condition . . . and a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."