Filed 8/27/20  Marriage of Balling and Jaramillo CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| In re Marriage of CHRISTINE BALLING and JUAN MARIO LASERNA JARAMILLO. | B297371<br><br>(Los Angeles County Super. Ct. No. ED039914) |
| CHRISTINE BALLING,<br><br>    Appellant,<br><br>    v.<br><br>JEAN BAPTISTE CHOCQUEUSE, as Personal Representative, etc.,<br><br>    Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy M. Pellman, Judge.  Reversed and remanded.

Law Office of Herb Fox and Herb Fox for Appellant.

Law Office of Roberta L. Murawski and Roberta L. Murawski for Respondent.

Christine Balling appeals the family court's denial of her request for an order setting aside the 2009 judgment of dissolution of her marriage to Juan Mario Laserna Jaramillo (Laserna), now deceased. We reverse and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Marriage, Dissolution and Reconciliation*

Balling and Laserna were married on July 2, 2007 in New Hampshire. Laserna, a Colombian national, lived in Bogota, Colombia, and worked for the Colombian government. Balling moved to Colombia after the wedding, and the couple registered their marriage with the Colombian government in August 2007.

At some point during the following months, the relationship became strained; and Balling moved to Glendale, California. On July 7, 2008 Balling and Laserna filed in LosAngeles Superior Court a joint petition for summary dissolution of the marriage on a form adopted for mandatory use by the Judicial Council (FL-800). By signing the form Balling and Laserna represented under penalty of perjury that neither of them had any interest in real property or had separate property in excess of $36,000. They affirmed they had exchanged all required financial disclosures and checked the box indicating they had no community assets or liabilities. The judgment of dissolution was entered on January 21, 2009.

Within a month of the entry of judgment, Balling and Laserna reconciled; and Balling moved back to Colombia in April 2009. The couple did not register the judgment of dissolution in Colombia because, according to Balling, they "specifically wished to be married in the eyes of our country of residence."

### 2. *Laserna's Death and Colombian Probate Proceedings*

Laserna was killed in a car accident in July 2016. One year later the Colombian court recognized Balling and Laserna's mother as Laserna's legal heirs. Laserna's mother passed away shortly after Laserna's death. The record does not reflect who succeeded her as Laserna's heir. Regardless, Balling stipulated to the joinder in this action of Jean Baptiste Chocqueuse, Laserna's nephew, as the personal representative of the Laserna family's interests. Laserna's family has sought to have the 2009 judgment of dissolution recognized in the Colombian courts. If successful, Balling asserts, this would deprive her of any claim to Laserna's estate or pension.

### 3. *Balling's Request for Order To Set Aside the Judgment of Dissolution*

In an effort to preserve her status in Colombia as Laserna's widow, on April 5, 2018 Balling requested an order setting aside the 2009 judgment of dissolution based on Laserna's breach of fiduciary duty, his failure to disclose assets at the time of the dissolution action and the parties' ineligibility for the summary dissolution procedure. Balling acknowledged the court had no jurisdiction to apportion assets located in Colombia. However, it appears she sought to set aside the judgment so it could not be relied on to support a posthumous divorce in Colombia and/or to reopen the dissolution proceeding to determine whether any undisclosed community property existed and to recover the value of her share of that property.

In support of her request for order, Balling submitted declarations in which she explained she and Laserna had "lived our lives in Colombia as husband and wife in every manner." She

stated she had been covered as Laserna's spouse under his health insurance policy, was the beneficiary of his life insurance policy and had been issued spousal visas in 2012 and 2014. When Laserna served as a senator in the Colombian Congress from 2010 to 2014, Balling was issued a diplomatic passport and shared Laserna's protective detail.

Balling and Laserna lived together in Colombia except for a period (the length of which Balling did not specify) when Balling rented an apartment for security reasons related to her work with the United States Special Operations Command. However, Balling continued to use Laserna's security detail during this time, and she slept at Laserna's house when their schedules permitted. In August 2015 Balling moved to Washington, D.C. to pursue an executive master's degree. Balling maintains she and Laserna continued their relationship while she was in Washington, D.C., and she planned to move back to Colombia after she had completed her studies. Balling acknowledged her relationship with Laserna was "tumultuous" but asserted they considered themselves to be married and neither of them ever dated other people.

During their relationship Balling and Laserna kept their finances separate, and each paid his or her own share of living expenses. Balling stated she had no reason to investigate Laserna's finances while he was alive. She knew he had an interest in his family's farm, but he had told her the farm was unsuccessful and may need to be sold. She was also aware Laserna owned the house in Bogota where they lived, but she stated it was in a high-crime area. Laserna had always said he was in debt, and Balling had no reason to believe otherwise.

Balling reported that Laserna fought often with his sisters over family assets.

According to Balling, it was not until Laserna's death that she discovered the extent of his assets. Balling alleged Laserna acquired significant community property assets during the time they were married in the United States, including approximately $100,000 of income; a building he purchased in December 2007 for more than $100,000; and business investments that had increased in value by approximately $760,000 during 2008. None of these assets was known to Balling when she elected to use the summary dissolution procedure.

In response to arguments from Chocqueuse, Balling acknowledged she had a retirement account in 2008 that had, unbeknownst to her at the time, disqualified her from using the summary dissolution procedure. She explained that improper use of the summary dissolution procedure had been a good faith mistake on her part because she "didn't think that a 401-K counted [toward community assets] because one can't use it." She now estimates the account earned less than $20,000 during the time she and Laserna were legally married in the United States. Balling also stated Laserna was aware of the retirement account, and she had not withheld any information from him regarding her finances.

In addition to her own declarations Balling submitted declarations from two of Laserna's close friends and employees. Andres Restrepo Falla stated he had worked for Laserna from 2009 until his death in 2016. The men were close friends; Falla viewed Laserna as a mentor. Falla said Laserna had a "difficult character" and anger management problems that caused "differences and arguing" between Balling and Laserna.

However, Falla "permanently and constantly knew [Balling and Laserna] as a couple and spouses showing deep love and fidelity to each other amidst all trials." Falla also stated Laserna had a "stormy and very difficult relationship with most members of his family."

Yann Serge Schonwald Gomez stated in his declaration that he had known Laserna since high school and had begun working for him in 2007. Gomez also said Laserna had anger management issues, and Laserna would often task Gomez with being the peacemaker between Laserna and Balling. According to Gomez, Balling threatened to leave Laserna in 2015; but in June 2016 she agreed to return to Colombia. Gomez also stated Laserna had been ill a few months before his death and had said he did not want his sisters to inherit his assets when he died.

4. *Laserna's Family's Response to the Request for Order*

Chocqueuse raised four arguments in opposition to Balling's request for order: The request was barred by the applicable statute(s) of limitations; the property Balling alleged Laserna acquired during the marriage was not community property; the relationship between Balling and Laserna did not continue until Laserna's death; and Balling should be estopped from setting aside the judgment because she also had assets disqualifying her from using the summary dissolution procedure.

Catalina Laserna, one of Laserna's sisters, submitted a declaration opposing Balling's request for order. She asserted Balling knew of Laserna's assets before his death and stated the property acquired by Laserna in 2007 "was not a purchase of a house by [Laserna]. This was part of a series of transactions done by me and my siblings to redistribute properties that were in the family." Contrary to Balling's assertions, Catalina

6

Laserna said her brother and Balling had lived together only "for a short time" and had a "tumultuous and unhappy relationship." Catalina Laserna believed her brother hired an attorney in 2015 to have the California dissolution judgment registered in Colombia.

Chocqueuse also submitted a declaration opposing Balling's request for order. Chocqueuse had lived in Europe for most of his life, but he stated he was nonetheless close with Laserna because he had been raised partially by Laserna's parents and because there was a relatively small age difference between them. Chocqueuse met Balling only twice; and he understood the couple fought regularly, with Balling repeatedly telling Laserna she wanted to leave him. In 2015 Laserna told Chocqueuse he planned to have the California judgment recognized in Colombia. Laserna said the relationship was over and asked his nephew to introduce him to another woman.

5. *The Family Court's Denial of the Request for Order*

At the court's suggestion the parties agreed to bifurcate the trial and decide the limitations issues first.

Balling submitted a trial brief asserting she did not have actual knowledge of Laserna's assets until after his death and her request for order was timely. She filed a list of 18 proposed trial exhibits, which included documents evidencing real estate transactions in Colombia, visa requests, and health and life insurance paperwork. She also filed a witness list naming six witnesses, including the individuals who had already submitted declarations.

Chocqueuse's trial brief argued Balling's request was untimely, Laserna had not breached any fiduciary duty, and there was no community property subject to the court's

7

jurisdiction. In addition, Chocqueuse filed a motion in limine requesting the court "decide the equitable issues of estoppel and unclean hands prior to all other issues. A ruling in favor of [Chocqueuse] will be dispositive and prevent the need for trial on statute of limitations or any other issue." Chocqueuse argued Balling should not be permitted to set aside a judgment she had actively participated in obtaining and, because she had assets above the limit permitted for a summary dissolution, she should not be entitled to claim the procedure was improper. In support Chocqueuse relied on Evidence Code section 623, which provides, "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

At a hearing on February 19, 2019 the court stated it would first address Chocqueuse's motion in limine.[1] Balling's attorney objected, arguing the trial should proceed in the agreed-upon order with the limitations issues being decided before any equitable estoppel argument was heard. The court proceeded to hear argument regarding estoppel.

After hearing from counsel, the court granted the motion. The court explained, "The issue today is Evidence Code 623 . . . ." "The only evidence the court has is based on the party's own admission that she knew that she had community property and potential other community. . . ." "Either she did it knowingly or

---

[1] The judge who had presided at pretrial proceedings was no longer available, and a different judge presided at the hearing on February 19, 2019.

8

fraudulently.  I don't know which. . . ."  "Under the law of equity and under the doctrine of unclean hands . . . I am going to have to grant the motion in limine."

The court denied Balling's counsel's request for a statement of decision and dismissed the request for order.

## DISCUSSION

1. *Governing Law[2]*

    a. *Summary dissolution and its requirements*

Section 2400 establishes a summary procedure permitting parties to obtain a dissolution without a court appearance.  To qualify, the following conditions, among others, must be met: There are no children of the relationship (subd. (a)(3)); the

---

[2]    To the extent the parties have argued the set-aside provisions of Family Code section 2120 et seq. apply to this case, they are mistaken.  Those sections apply "'when either party is seeking to "undo" a property division judgment that *adjudicated* particular assets and/or liabilities.  By contrast, those statutes have *no* effect on proceedings to determine community interests in assets and liabilities that were *unadjudicated* or *omitted* from the judgment.'"  (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 575; see Fam. Code, § 2121, subd. (a) ["[i]n proceedings for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter"].)

Statutory references are to the Family Code unless otherwise stated.

9

marriage is not more than five years in duration as of the date of separation (subd. (a)(4)); neither party has any interest in real property wherever situated (subd. (a)(5)); the total fair market value of community property assets, including any deferred compensation or retirement plan, is less than a specified amount (subd. (a)(7)); and neither party has separate property assets in excess of a specified amount (subd. (a)(7)).[3]  Parties seeking summary dissolution are required to exchange preliminary declarations of disclosure pursuant to section 2104[4] but are not

---

[3]     The amount specified as the threshold value of community or separate property disqualifying parties for summary dissolution is adjusted every other year by the Judicial Council to reflect any change in the value of the dollar.  (See § 2400, subd. (b).)  In 2008, when Balling and Laserna filed their petition for summary dissolution, the amount was $36,000.

[4]     Section 2104 requires the parties to a dissolution proceeding to exchange declarations of disclosure executed under penalty of perjury.  The declarations must include:  "(1)  The identity of all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the charato qualifycterization of the asset or liability as community, quasi-community, or separate.  [¶] (2)  The declarant's percentage of ownership in each asset and percentage of obligation for each liability when property is not solely owned by one or both of the parties.  The preliminary declaration may also set forth the declarant's characterization of each asset or liability."  (§ 2104, subd. (c).)  The preliminary declarations must also include the declarant's tax returns for the prior two years and an income and expense declaration.  (§ 2104, subds. (a), (e).)  The declarations must be served within 60 days of the filing of, or response to, the petition for dissolution. (§ 2104, subd. (f).)

required to exchange final declarations of disclosure pursuant to section 2105.  (See § 2109.)  The summary dissolution proceeding is commenced by the filing of a joint petition signed by both spouses and stating under penalty of perjury that the conditions for a summary dissolution have been met and the parties have exchanged the required disclosures.  (See § 2401.)  Six months after the petition is filed the court enters the judgment of dissolution of the marriage.  (See § 2403.)

Section 2405, subdivision (a), provides that either party may institute an action to set aside the judgment of dissolution on the grounds of "fraud, duress, accident, mistake, or other grounds recognized at law or in equity."  In addition, section 2405, subdivision (b), states, "The court shall set aside a judgment entered pursuant to Section 2403 regarding all matters except the status of the marriage, upon proof that the parties did not meet the requirements of Section 2400 at the time the petition was filed."  Section 2405 does not include a time limit within which a party must seek to set aside a summary dissolution judgment.  (See generally *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 93 & fn. 13 ["[w]here little judicial time and effort have been expended, "'. . . the factor of judicial economy which otherwise weighs in favor of finality is less strong'""].)

b.  *Married individuals' fiduciary duties*

Married individuals are subject to the general rules governing fiduciary relationships and owe one another a duty of the highest good faith and fair dealing.  (§§ 721, subd. (b); 1100, subd. (e); see *In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1343-1344.)  Section 1100, subdivision (e), specifically provides, "This duty includes the obligation to make full disclosure to the other spouse of all material facts and

11

information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable." These fiduciary duties of disclosure extend throughout dissolution proceedings. (See § 1100, subd. (e); see also *In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 569.)

Section 1101, subdivision (a), creates a right of action by one spouse against the other for breach of fiduciary duty when the breaching spouse engages in conduct that impairs the value of the non-breaching spouse's interest in community property. Section 1101, subdivision (g), states, "Remedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs." (See *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992 ["[w]hen . . . a spouse has breached [his or] her fiduciary duty, but not in a manner displaying fraud, malice, or oppression . . . section 1101, subdivision (g), governs the applicable remedies"].)

c. *Postdissolution proceedings regarding undisclosed or unadjudicated community property*

Section 2107, subdivision (d), provides, "[I]f a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment."[5] The failure to disclose need not amount to a

---

[5] Although section 2107, subdivision (d), specifies "[t]he failure to comply with the disclosure requirements does not constitute harmless error," article VI, section 13, of the California

12

breach of fiduciary duty.  (See *In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 296.)

Section 2556 provides, "In a proceeding for dissolution of marriage . . . the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding.  A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment.  In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."  (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850-851 ["'property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile'"]; *In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1059 ["a dissolution judgment does not

_____

Constitution prohibits setting aside a judgment based on procedural error absent a showing "the error complained of has resulted in a miscarriage of justice."  "The California Constitution trumps any conflicting provision of the Family Code. . . .  [¶]  To the degree, then, that section 2107, subdivision (d) is read for the proposition that a judgment must be set aside or a new trial granted solely because of a failure to exchange . . . declarations of disclosure, it is not consistent with our state's Constitution." (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 527; accord, *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 92 [showing of prejudice required notwithstanding statutory language].)

affect the disposition of community property as to which the judgment is silent"].)

"In providing courts with continuing jurisdiction, section 2556 imposes no time limit on former spouses to seek to adjudicate omitted or unadjudicated community property after a dissolution judgment was entered." (*In re Marriage of Huntley, supra*, 10 Cal.App.5th at p. 1060.) In addition, section 2556 applies even when one or both of the former spouses were aware of the community property at the time the dissolution judgment was entered. (See *Huntley,* at pp. 1060-1061; *Huddleson v. Huddleson* (1986) 187 Cal.App.3d 1564, 1569.)

### d. *Equitable estoppel and unclean hands*

"'Family courts are courts of equity and there is a basic principle of equity that one cannot take advantage of one's own wrong.'" (*In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1403.) Accordingly, pursuant to the doctrine of equitable estoppel, "a person may not deny the existence of a state of facts if he [or she] intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his [or her] detriment." (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 332.) This doctrine is codified in Evidence Code section 623. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359 & fn. 8.)

Similarly, the doctrine of unclean hands serves to deny relief to plaintiffs who have committed the same or similar wrongdoing as those for which they seek relief. (See *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059.) "The doctrine demands that a plaintiff act fairly in the matter for which he [or she] seeks a remedy. He [or she] must come into court with clean hands, and keep them clean, or he [or she] will be denied relief,

14

regardless of the merits of his [or her] claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.)

Whether the doctrines of equitable estoppel and unclean hands apply is a question of fact. (See *Kendall-Jackson Winery Ltd. v. Superior Court, supra*, 76 Cal.App.4th at p. 979; *Feduniak v. California Coastal Com., supra,* 148 Cal.App.4th at p. 1360.)

2. *Standard of Review*

We review de novo issues of statutory construction. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) In construing statutes "[o]ur fundamental task . . . is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute[s]. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'"" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; accord, *People v. Lawrence* (2000) 24 Cal.4th 219, 230.)

15

### 3. *The Family Court Erred by Failing To Consider the Provisions of Applicable Statutes Before Denying Balling's Request for Order*

As discussed, the family court denied Balling's request to set aside the 2009 judgment of dissolution based on equitable estoppel (by way of Evidence Code section 623) and the doctrine of unclean hands. Of course, equitable principles may apply when a party seeks to set aside a judgment of dissolution. (See generally *In re Marriage of Klug, supra,* 130 Cal.App.4th at p. 1403.) However, when the Legislature has addressed a specific situation, a court cannot wholly ignore the statutory mandate in favor of equitable considerations. (See *Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1368, fn. 5 ["""[r]ules of equity cannot be intruded in matters that are plain and fully covered by positive statute"""].)

Here, the governing statutes require the family court to set aside a judgment and/or adjudicate an omitted or community asset in certain situations even if a spouse acted with unclean hands. For example, as discussed, section 2405, subdivision (b), states the court "shall set aside" a summary dissolution judgment if the parties did not meet the requirements of section 2400. Use of the word "shall" is "unambiguous and mandatory. "It is a well established rule of statutory construction that the word 'shall' connotes mandatory action."" (*In re Marriage of Hokanson*, *supra*, 68 Cal.App.4th at p. 993; accord, *Ramos v. Superior Court* (2007) 146 Cal.App.4th 719, 729 ["[t]he Legislature's use of the word 'shall' to describe the action to be taken by the magistrate means the statute is absolute"].) There is nothing in the language of section 2405 or case law interpreting it that would justify an exception if the spouse seeking to set aside a judgment

acted with unclean hands. (See *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 42-43 [unclean hands defense not available to prevent award of penalty for breach of fiduciary duty pursuant to section 1101, subdivision (h), which states amount "shall" be awarded].)

Here, it is undisputed Balling and Laserna each had separate property in excess of $36,000 at the time the petition for summary dissolution was filed; thus, the couple did not qualify for a summary dissolution judgment under section 2400, subdivision (a)(7). Accordingly, pursuant to the unambiguous language of section 2405, subdivision (b), the court must set aside the judgment "regarding all matters except the status of the marriage." The family court erred by failing to follow this statutory mandate.[6]

Chocqueuse's final argument, that Balling cannot show she was prejudiced by any failure of Laserna to disclose assets because the family court has no jurisdiction to apportion assets located in Colombia, ignores the statutory remedies available to Balling. In addition to a set-aside of the judgment, Balling may be entitled to recover 50 percent of the value of any undisclosed community asset. (See § 1101, subd. (g).)

---

[6]    As for the remaining statutes potentially applicable to the facts as alleged by Balling, it is disputed whether Laserna breached his fiduciary duties of disclosure pursuant to section 1101 and failed to make disclosures pursuant to section 2104 or whether there were any community assets. If the family court were to find any of these circumstances had been proved, then it must impose the corresponding remedies mandated by sections 1101, 2107 and 2556, unless an articulated exception applies.

17

## DISPOSITION

The order denying the request for order to set aside the judgment of dissolution is reversed.  On remand the family court shall, pursuant to section 2405, set aside the January 21, 2009 judgment of dissolution except as to the status of the marriage. The court shall conduct all necessary further proceedings not inconsistent with this opinion.


                                        PERLUSS, P. J.


We concur:


        FEUER, J.


        DILLON, J.*

---

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18