[Civ. No. 6838.   First Appellate District, Division One.—January 15, 1930.]

PETER P. McDONOUGH et al., Respondents, v. CHARLES C. WAXMAN et al., Appellants.

Samuel D. Hamburg for Appellants.

Joseph A. Brown for Respondents.

KNIGHT, J.—This is an appeal by the defendants from a judgment rendered against them in an action to recover upon a contract of indemnity.

The material facts are as follows: One Morris Appleman had been or was about to be arrested by the federal authorities upon a charge of having violated the immigration laws, and pending the hearing and determination of the charge he was admitted to bail in the sum of $1,000. Plaintiffs, as agents for a surety company, were employed by defendants to furnish the bail, which they did, and Appleman was released from custody. The condition upon which plaintiffs furnished bail was that defendants enter into the contract of indemnity in question, the essential portions of which are hereinafter set forth. The charge against Appleman resulted in an order for his deportation, and *habeas corpus* proceedings were then instituted in his behalf to test the legal sufficiency of the charge and the validity of the deportation proceedings based thereon; but as a prerequisite to obtaining such a writ it was necessary for Appleman to surrender into the custody of the United States marshal, which he did, immediately following which he was again admitted to bail in the sum of $1,000, which plaintiffs again furnished. Pending the hearing of the latter proceeding Appleman disappeared, and as a consequence his bond was declared forfeited, and plaintiffs were required to pay the principal thereof to the government in conformity with the terms of the bond and the order of forfeiture. The main contention defendants make in support of their appeal is that Appleman's surrender in exoneration of the first bond operated as a termination of the contract of indemnity, and that consequently they were not liable for the loss suffered by plaintiffs as a result of the forfeiture of the second bond.

The general rule is that a guarantor will not be held responsible for anything not within the express terms of his contract, and that his liability cannot be extended beyond those terms by implication; but in this connection

it is held that for the purpose of ascertaining the meaning of the language used in such a contract the same rules of construction used in the interpretation of other contracts are to be employed; and like other contracts they ought not to be construed with technical nicety, but should be given a fair and reasonable interpretation in order to ascertain the true intent of the parties (13 Cal. Jur. 103).

We agree with the trial court's conclusion that the contract in question, when construed in the light of the foregoing legal rules, is broad enough in its terms to include liability for the loss suffered by plaintiffs as a result of the forfeiture of the bond given in the *habeas corpus* proceeding. It reads in part as follows: "Whereas, Morris Appleman, hereinafter called defendant, has been or is about to be arrested and is now or is about to be held in custody at —— on a charge of Vio Immigration Law, and having been admitted to bail in the sum of $1,000.00 by bond, or by deposit of $1,000. dollars in cash, and Whereas I am desirous of having said defendant discharged from such custody and do hereby request McDonough Bros. of the City and County of San Francisco to give or cause to be given bail for the discharge of said defendant from such custody, either in said amount or in any other amount to which said bail shall be increased or reduced, Now, therefore, upon and in consideration of said McDonough Bros. giving or causing such bail to be given and thus procuring the discharge of said defendant from such custody I do hereby guarantee, undertake and promise . . . to hold and save said McDonough Bros., their heirs and assigns, free, clear and harmless of and from and to indemnify them against any and all liability, loss, demands, claims, damages, forfeiture or loss of said bail," etc.

As will be observed from the foregoing recitals, at the time of the execution of the contract Appleman had been or was about to be arrested on a charge of violating the immigration laws, and the very purpose of the employment to furnish bail was to prevent his imprisonment during the period of time he was exercising whatever legal remedies were available to establish that said charge was without foundation in law or fact. Obviously the *habeas corpus* proceeding, being a method of inquiry into the legal sufficiency of the charge and of the order of deportation made

pursuant thereto, constituted a part and in fact was a continuation of the attack Appleman was entitled to make against said charge in order to absolve himself therefrom. It will be noted also that more than one bond was contemplated because the contract by its terms authorized plaintiffs to furnish bail in the sum of $1,000, "or any other amount to which it shall be increased or reduced"; and it was not specified therein at what particular stage of the federal proceeding the bail was to be furnished, nor was defendants' liability restricted to loss which might be incurred by reason of the forfeiture of any particular bond. Therefore, so far as the question of liability is concerned, it would seem to be immaterial whether the bond was given at one stage of the proceeding or another, so long as it served as bail to secure Appleman's release from imprisonment while pursuing a legal remedy to exculpate himself from the particular charge set forth in the contract of indemnity, namely, a violation of the immigration laws. And it is apparent that defendants themselves intended such to be the scope and effect of their contract, because evidence was adduced to show that prior to the execution of the contract they were fully informed that two bonds would doubtless be required, and that liability under their contract would continue "until the termination of the case"; and the attorney then representing Appleman explained to one of the defendants before he signed the contract that in resisting the charge *habeas corpus* proceedings would be resorted to, if necessary, in which event two bonds would be required. Moreover, evidence was introduced to the effect that prior to the surrender of Appleman in custody and the institution of the *habeas corpus* proceeding both defendants knew of the intention to take such action. Consequently, contrary to the claim made by defendants in that behalf, they were given an opportunity to object to such a move being made if they had so desired.

The complaint alleged that plaintiffs "are now and have been at all of the times herein mentioned engaged in business in the city and county of San Francisco, State of California, under the firm name and style of McDonough Bros.," and at the opening of the trial defendants stipulated that the foregoing allegation was true; but it appears that the caption of the complaint read as follows: "Peter P.

McDonough and Thomas McDonough, doing business under the name and style of McDonough Bros., a corporation, Plaintiffs." Defendants did not demur to the complaint, nor did they make any point regarding the caption in the trial court, but they now contend that the findings and judgment are unsupported by the evidence because no proof was offered to establish such corporate entity. The point is without merit, for the reason that the caption of the complaint constitutes no part of the statement of the cause of action, and it follows that the presence therein, inadvertently, of the words "a corporation" is of no importance. Moreover, at no time have plaintiffs claimed a corporate entity, nor are the findings or the judgment based upon any such theory.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 14, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 13, 1930.

All the Justices concurred.