[Civ. No. 969. Fifth Dist. Jan. 3, 1969.]

JOHN VAN RUITEN, Plaintiff and Respondent, v. BERT VAN RUITEN, Defendant and Appellant.

620

John G. Robertson for Defendant and Appellant.

Rogers, Clark & Jordan, Lawrence W. Jordan, Jr., and Kelso, Cotton, Seligman & Ray for Plaintiff and Respondent.

GARGANO, J.—Respondent (plaintiff below) brought this action against his uncle, Bert Van Ruiten (appellant herein), for a partnership accounting and to establish a constructive trust on certain real property known as the Imeson Ranch.[1] Appellant's answer alleged that respondent had no interest

---

[1]Respondent also joined his uncle, Pete Van Ruiten, as a party defendant in the action. However, these parties agreed to a stipulated judgment and hence this defendant is not involved in the appeal.

in the Imeson Ranch, that the partnership had been dissolved, that a final accounting had already been reached between the parties, and that respondent was guilty of laches. Appellant also filed a counterclaim alleging in essence that he loaned respondent the $14,000 which respondent needed to meet his share of the original capital contribution and that he (appellant) was entitled to an affirmative judgment or to a setoff against any judgment secured by respondent on his complaint of $13,623, the amount still due and owing on this indebtedness.

After court trial the court made findings of fact and conclusions of law substantially favorable to respondent. These findings and conclusions are herein summarized as follows:

First, the court found that appellant and his nephew were engaged in the farming and dairy business under the name of Van's Dairy in San Joaquin County as copartners from February 1951 through July 31, 1958. The court also found that under their oral partnership agreement all profits and losses were to be shared equally by the partners except that appellant promised to pay respondent a salary of $400 per month out of appellant's share of the partnership profits in order to compensate respondent for the performance of partnership labor. However, contrary to this promise, respondent's salary was treated as a partnership expense, and hence only $200 a month (instead of $400 a month) was charged against appellant's share of the partnership profits. The court then concluded that respondent was entitled to receive an additional $200 per month for the 89-month period of the partnership and that hence appellant was indebted to respondent in the amount of $17,800.

Second, the court found that in 1956 the partnership acquired approximately 571 acres of land in San Joaquin County, known as the Imeson Ranch, for partnership uses and purposes, and that from November 1, 1956, this land was used in connection with the partnership business and was improved with partnership money and labor. The court found, however, that unbeknown to respondent title to the ranch was taken in the name of Gail H. Eagleton, the partnership lawyer, who in turn conveyed it to appellant on November 1, 1956. The court therefore concluded that on November 1, 1956, and thereafter, appellant held title to an undivided one-half interest in the Imeson Ranch as trustee of a constructive trust for the use and benefit of respondent.

Third, the court found that appellant expended $179,000

of his personal funds in the acquisition and improvement of the Imeson Ranch and executed a mortgage in favor of the sellers of the property in the amount of $141,000 payable at the rate of 5 percent per annum.[2] The court decreed that appellant was entitled to reimbursement for one-half of the expenditures he made, that respondent was to have five years in which to pay this indebtedness amounting to $89,500, that appellant was entitled to a lien on respondent's undivided one-half interest in the Imeson Ranch as security, and that respondent was to assume one-half of the mortgage which by then amounted to $70,500. The court also decreed that appellant was entitled to interest at the rate of 7 percent per annum on the sum of $29,500 (the payment he made to the sellers of the Imeson Ranch on respondent's behalf) for the period from November 1, 1956, to and including July 1, 1966. However, the court then concluded that respondent was entitled to a fair return on the same sum of $29,500 at the rate of 10 percent per annum for a like period, apparently to compensate respondent for appellant's use of the Imeson Ranch during this period.

Fourth, the court found that the partnership was dissolved by mutual consent on July 31, 1958, and certain assets and liabilities of the partnership were distributed to and assumed by the partners. However, the court also found that no dissolution agreement was reached between the partners concerning the operation, distribution or ownership of the Imeson Ranch, and at no time during July 1958 or any time subsequent thereto was there any final accounting between the parties as to a settlement of the partnership affairs, its assets or liabilities, that at no time during July 1958 or any time subsequent thereto was there any accord and satisfaction between the parties, that at no time during July 1958 or any time subsequent thereto was any account stated, that appellant was not entitled to any offset under his counterclaim, and that respondent was not guilty of laches.

Appellant's main contention for reversal, and the only contention we find necessary to resolve in this appeal, is that the evidence is insufficient to support the judgment. Specifi-

---

[2]The expenditures made by appellant consisted of the following items:

| | | |
|---|---|---|
| Cash payment to sellers | | $ 59,000 |
| Payment of mortgage existing at time of purchase | | 45,000 |
| Improvements after acquisition | | |
| House | $40,000 | |
| Ditch and road | 35,000 | 75,000 |
| | | $179,000 |

cally, appellant asserts that the court wrongfully impressed a trust in favor of respondent against one-half of the Imeson Ranch; that there is no substantial evidence to justify the court's finding that appellant agreed to pay all of respondent's salary from his share of the partnership profits; that the evidence compels the conclusion that appellant is entitled to an offset in the amount of $13,623 on his counterclaim; that there is no evidence to support that portion of the judgment which allows respondent a return of 10 percent per annum on the sum of $29,500 for the period from November 1, 1956, to July 1, 1966.

We shall consider each of these points separately. However, we also shall bear in mind that an appellate court does not weigh or resolve conflicts in the evidence nor does it judge the credibility of witnesses. On the contrary, we shall apply the well settled, but often repeated, rule that if any substantial evidence, contradicted or uncontradicted, or any reasonable inferences therefrom will support the judgment, it must be upheld (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]).

1) Appellant admits that there was a fiduciary relationship between himself and his nephew, both as partners and relatives, when he acquired title to the Imeson Ranch in 1956. Thus, his argument that there was not sufficient evidence for the court to impress a constructive trust in the instant case is primarily an attempt to reargue the weight, not the sufficiency of the evidence. In short, albeit there appears to be sufficient evidence in the record to support a finding that no constructive trust ever came into existence in 1956, there is also substantial evidence to justify the court's contrary finding. Under these circumstances, an appellate court is bound by the trial court's decision.

The ranch was discovered by respondent at a time when the partnership was in need of additional land in San Joaquin County for partnership purposes. In fact, it was respondent who applied to the American Trust Company for a $50,000 loan which was used to buy the ranch; significantly, both partners and their wives signed the promissory note, and partnership assets were used as collateral. Moreover, the ranch was not only used for partnership purposes, but after it was purchased an existing partnership lease on other property was terminated and partnership cattle were transferred from this property to the ranch; no rent or pas-

turage fees were charged for this or any other partnership use. Finally, respondent made some improvements on the Imeson Ranch himself and supervised partnership employees in making others. And, during the years 1957 and 1958, $16,469.27 of partnership funds were spent for ranch improvements.

2) Appellant admits that respondent was entitled to a partnership salary for the work he performed on behalf of the partnership. He vigorously maintains, however, that he did not agree to personally pay all of this salary and that there is absolutely no evidence to warrant such a finding. In short, appellant argues that respondent's $400 per month salary was a partnership expense and that therefore one-half of the salary was properly charged to appellant's share of the partnership profit. He concludes that the court erred when it charged appellant with an additional $200 per month for the entire term of the partnership.

It is the general rule that in the absence of an express or implied agreement to the contrary, a partner is not entitled to compensation for acting in the partnership business (Corp. Code, § 15018, subd. (f); *Wind* v. *Herbert*, 186 Cal. App.2d 276, 286 [8 Cal.Rptr. 817]). Moreover, ordinarily when a working copartner is paid a salary, the salary is deducted from the partnership income as a partnership expense, not against the nonworking partner's share of the partnership profits; otherwise, the nonworking partner would be paying for all of his partner's service. Thus, we agree with appellant's contention that the court unjustifiably held that appellant agreed to pay all of respondent's salary from his share of the partnership profits. In fact, we conclude that the court's finding on this issue, when viewed in light of the undisputed facts of this case, is not consonant with common sense.

First, appellant not only furnished one-half of the partnership capital, but he also loaned respondent the money which respondent needed for his share. Yet, if respondent's entire salary was deductible from appellant's share of the net profits, as respondent maintains, and if, for example, the partnership business netted only $10,000 in any given year, respondent would have been entitled to receive $9,800 while appellant received only $200.

Second, according to respondent's own testimony, appellant agreed to reimburse ''Van's Dairy'' for the wages of

one man.[3] Thus, albeit it is arguable that appellant impliedly agreed to respondent's partnership salary as a partnership expense, by no stretch of the imagination did he also impliedly agree to personally pay this entire salary. In other words, it is reasonably clear that appellant, who was not going to work for the partnership business, intended to assume his fair share of the partnership labor by reimbursing the business for the wages of one man. However, it is one thing to hold that appellant impliedly promised respondent a partnership salary, as a partnership expense (particularly if the full-time services of one additional man were not needed); this would be equivalent to reimbursing the partnership for the wages of one man. It is another matter entirely to distort appellant's promise to mean that appellant personally assumed to pay all of his partner's salary. We do not find it reasonable to do so in the instant case.

It is the rule that when there is no conflict in the evidence, the construction of a written agreement is a question of law and must be treated accordingly by an appellate court (*Moffatt* v. *Tight*, 44 Cal.App.2d 643, 648 [112 P.2d 910]). We believe the same rule is applicable to an oral promise.

Respondent argues that the notation which appears on the account sheet prepared by the partnership auditor is substantial (extrinsic) evidence in support of the trial court's interpretation of appellant's oral promise. However, this notation is not helpful to respondent even when taken out of context as he has done in his brief. It is part of the caption of the capital account sheet and merely states "Capi-

---

[3]Respondent, John Van Ruiten, testified as follows:

"Q. Now your agreement with your Uncle with reference to the Van's Dairy partnership was to split the profits fifty percent to each except that Bert Van Ruiten was to reimburse Van's Dairy for the wages of one man, is that not correct?

A. He said, 'I'm going to pay for one man.'

Q. He was going to pay?

A. For one man.

Q. Van's Dairy for one man?

A. That's right. That was the statement he made.

Q. And that is what occurred?

A. That was at the same time at the beginning of the partnership, yes."

Moreover, in the letter to Mr. Gail H. Eagleton, the partnership lawyer, respondent stated: "Our original agreement was to share equally in the profits except that Uncle Bert agreed to reimburse Van's Dairy for the wages of one man from his 50 per cent inasmuch as he can not be here to share the work and management. His original contribution was $14,000 in cash and property. My contribution was $14,000 cash borrowed from Uncle Bert at 5 per cent simple interest."

tal Accounts adjusted to allow John [respondent] $400.00 per month 3/1/1951 to December 31, 1957.'' Thus, albeit the notation proves respondent's entitlement to a partnership salary, it does not prove that the entire salary was chargeable to appellant's share of the partnership profits. In short, the notation in the caption simply indicates that respondent was entitled to a partnership salary, as a partnership expense, and that the capital accounts of the partners were adjusted to reflect this salary. Moreover, it is not what is contained in a caption that is important; a caption or a legend is merely descriptive of what is to follow. Consequently, it is what is contained in the account sheet itself that is significant. And when the account sheet is scrutinized, it is abundantly clear that the accountant who made the notation in the caption treated respondent's salary as a partnership expense and adjusted the capital accounts of the partners accordingly.

In any event, respondent's salary, with respondent's knowledge and apparently with his consent, was shown as partnership expense during the entire life of the partnership in all of the partnership income tax returns. In fact. the partnership auditor, while referring to the 1952 federal income tax return, advised respondent by letter as follows: ''I have gone over all of this with your Uncle so he knows all about it. The dairy made a profit of $15,206.87 for the year and your share was arrived at as follows: We allowed you a salary of $3,600.00 for the year, deducted this from $15,206.87 which equals 11,606.87. This then was divided in half which equals $5,803.44. Your figure of $9 403.44 is arrived at by adding 3,600.00 and 5,803.44.'' Manifestly, then, the extrinsic evidence is contrary to, not supportative of, the court's interpretation of appellant's oral promise.

 3) Appellant argues that the evidence proves, as a matter of law, that $13,623 is still due and owing on appellant's initial $14,000 loan to respondent. Appellant therefore concludes that the court's finding that ''John [respondent] is not indebted to Bert [appellant] . . . for any sums or monies other than as found herein'' is erroneous and contrary to the uncontradicted evidence. On the other hand, respondent asserts that it is clear from the evidence that no agreement or settlement was ever reached by the parties on this subject and hence the court correctly disallowed the $13 623 offset.

It is undisputed that appellant loaned respondent the $14,000 which respondent initially used for his share of the

partnership capital. It is also clear from the evidence that this loan was never repaid in full by respondent. At the very most, the evidence suggests that the parties never reached a settlement as to exactly how much was still due and owing. Thus, although the court was not obligated, as a matter of law, to allow appellant a $13,623 offset as appellant maintains, its finding that no sum was due and owing is also contrary to the uncontradicted evidence and is erroneous.

■ 4) As we have previously stated, the court found that appellant paid $29,500 to the sellers of the Imeson Ranch on behalf of respondent and then allowed respondent a return of 10 percent per annum on this amount for what the court termed the ''use by Bert [appellant] of said Imeson Ranch. Appellant asserts that this portion of the judgment is indefensible for the court awarded respondent interest on appellant's own money. Appellant also argues that there is absolutely no evidence to justify the court's finding that a return of 10 percent was a fair and reasonable return on the money for the period from November 1, 1956, to July 1, 1966.

It is of course arguable that the court could have reasonably allowed respondent a fair return on his interest in the Imeson Ranch during the period that appellant used it for other than partnership purposes. However, we see no necessary relationship between the cash payment which appellant allegedly made to the sellers on respondent's behalf and the value of respondent's interest in the ranch. Consequently, the court seemingly allowed respondent 10 percent interest on appellant's own money as appellant maintains. Moreover, there is no evidence to support a finding that 10 percent per annum was a fair return on the sum of $29,500 for the years in question, let alone that 10 percent per annum was a fair return on respondent's interest in the ranch. Manifestly, the court's decision in this respect is arbitrary.

In view of the substantial errors which occurred at the trial level, and in view of the fact that the main issues of this case are primarily equitable and interrelated, we conclude that the judgment must be reversed in its entirety even though, as we have stated, there was substantial evidence to support the trial court's judgment impressing a constructive trust. Moreover, since the answers to appellant's remaining contentions involve issues which are equitable in character and largely dependent upon the nature of the evidence produced at the new trial, we do not deem it advisable to attempt to answer these contentions in this appeal.

The judgment is reversed and a new trial ordered on all issues.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied January 30, 1969, and respondent's petition for a hearing by the Supreme Court was denied February 26, 1969.