[No. D058117. Fourth Dist., Div. One. Dec. 6, 2011.]

BRIAN STIGER, as Director, etc., Plaintiff and Respondent, v. ARTHUR MOSES FLIPPIN et al., Defendants and Appellants.

**COUNSEL**

Iungerich & Spackman and Russell Iungerich for Defendants and Appellants.

Kamala D. Harris, Attorney General, Carlos Ramirez, Assistant Attorney General, Thomas S. Lazar and Alexandra M. Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**IRION, J.**—Arthur Moses Flippin, M.D., and Jacquelyn Jones (collectively, defendants) appeal an order enforcing administrative subpoenas issued by the Medical Board of California (the Board) as part of an investigation into the timeliness of defendants' submission to the Board of a peer review report required by Business and Professions Code[1] section 805 (805 report). Defendants contend the order must be reversed for two reasons: (1) the Board has no jurisdiction to investigate a medical group—it may only investigate an actively practicing physician licensed by the Board and (2) the Board has no jurisdiction to investigate when a required 805 report has been filed late—it may only investigate when a required 805 report has never been filed. We reject these contentions and affirm the challenged order.

I

FACTUAL AND PROCEDURAL BACKGROUND

This appeal challenges an order enforcing administrative subpoenas. Because defendants did not file an answer or other responsive pleading to the

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

petition to enforce the subpoenas (hereafter, petition), but only a memorandum of points and authorities in opposition to the petition, "the facts alleged in the petition are uncontroverted and are deemed true on this appeal." (*Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072, 1075, fn. 1 [21 Cal.Rptr.2d 840].) The pertinent facts are as follows.

On January 16, 2008, the Osteopathic Medical Board of California received from defendants an 805 report pertaining to Robert Petruzzo, Jr.[2] According to the 805 report, Dr. Petruzzo "resigned as a partner in the Southern California Permanente Medical Group ('SCPMG') after a restriction in work practice due to continued quality concerns regarding the reading of CTs, MRIs and Ultrasounds." The 805 report states that the actions leading up to Dr. Petruzzo's work restrictions occurred from "September '07 to Present." Jones prepared the 805 report, and on January 15, 2008, Dr. Flippin signed it as SCPMG's (Southern California Permanente Medical Group) "Chief Executive Officer/Medical Director/Administrator."

Although the record does not reveal how the Board received the 805 report concerning Dr. Petruzzo, the Board obviously did receive it, because in September 2008, the Board initiated an investigation into the timeliness of its filing. (See § 805, subd. (b)(3) [requiring 805 report to be filed within 15 days of imposition of restrictions on staff privileges of physician].) As part of the Board's investigation, defendants were personally served with investigative subpoenas requiring them to appear and testify "in regard to the [805 report]." Defendants, through their counsel, notified the Board they considered the subpoenas "invalid" and would not comply with them.

The Board, acting through the Director of the Department of Consumer Affairs, Brian Stiger, filed the petition. (See Gov. Code, § 11187 [authorizing head of department to petition court to enforce investigative subpoena].) Over defendants' opposition, the court granted the petition and ordered defendants to appear and give testimony before the Board's investigator.

---

[2] It is unclear from the record whether Dr. Petruzzo is a physician subject to regulation by the Board or an osteopathic physician subject to regulation by the "self-sustaining Osteopathic Medical Board." (3B pt. 1A West's Ann. Bus. & Prof. Code (2011 ed.) § 3600-1, p. 115.) The petition alleges he is an Osteopathic Medical Board of California licensee, in which case he would be subject to regulation by the Osteopathic Medical Board. (See 3B pt. 1A West's Ann. Bus. & Prof. Code, *supra*, § 3600-2, p. 120.) But, the petition also uses the suffix "M.D.," rather than "D.O.," after Dr. Petruzzo's name, and the 805 report was addressed to the Board and lists Dr. Petruzzo as a licentiate, suggesting he is a physician subject to the Board's regulation. (See §§ 2004, 2055.) We need not and do not resolve the issue to decide this appeal, however, because the record is clear that Dr. Flippin is a physician licensed by the Board and thus subject to its regulation.

## II

## DISCUSSION

Defendants contend we must reverse the trial court's order enforcing the investigative subpoenas because the Board "lacks jurisdiction to investigate [SCPMG]." According to defendants, the Board's jurisdiction extends only to individuals who are licensed by the Board and are actively practicing medicine, not to a group of physicians such as SCPMG. Defendants also assert that the Board's authority to investigate the failure to file required 805 reports extends only to cases in which no 805 report was ever filed, not to cases, like this one, in which an 805 report was filed late. Consequently, defendants contend, "the subpoenas being enforced in this case are illegal and void." As we shall explain, these contentions lack merit.

A. *The Board Has Jurisdiction to Investigate the Timeliness of the 805 Report*

██ We first address the jurisdictional issue. An administrative agency has only those powers that have been granted expressly or impliedly by Constitution or statute. (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042 [56 Cal.Rptr.2d 109, 920 P.2d 1314]; *Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 114 [192 Cal.Rptr. 455].) When the essential facts are not in dispute, whether an administrative agency has acted beyond its granted powers—i.e., has exceeded its jurisdiction—is a question of law reviewed de novo on appeal. (*Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 211–212 [106 Cal.Rptr.2d 863].) Because the pertinent facts are undisputed, we examine the statutes defining the Board's duties and powers to determine whether the Board had jurisdiction to undertake the investigation challenged here.

The Board is an administrative agency within the Department of Consumer Affairs. (§§ 101, subd. (b), 2001, subd. (a).) As our Supreme Court has explained, the Board, acting under various names, has been a "key instrument" in the regulation of the practice of medicine since its statutory creation in 1876. (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 7 [56 Cal.Rptr.2d 706, 923 P.2d 1] (*Arnett*).) "Since the earliest days of regulation the Board has been charged with the duty to protect the public against incompetent, impaired, or negligent physicians, and, to that end, has been vested with the power to revoke medical licenses on grounds of unprofessional conduct [citation]." (*Ibid.*) Consistent with its overall mission, the Board has been given statutory responsibility for, among other things, "enforcement of the disciplinary and criminal provisions of the Medical Practice Act [(§ 2000 et seq.)]" and "[r]eviewing the quality of medical practice carried out by

physician and surgeon certificate holders under the jurisdiction of the [B]oard." (§ 2004, subds. (a), (e).)

■ To enable the Board to carry out its enforcement responsibilities, the Medical Practice Act "broadly vests" the Board with investigative powers. (*Arnett, supra*, 14 Cal.4th at pp. 7–8; see also § 2220 [defining Board's investigative powers].) "Such investigatory powers have been liberally construed." (*Shively v. Stewart* (1966) 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65].) The Board's investigative powers with respect to disciplinary actions "relating to" physicians licensed by the Board are exclusive. (§ 2220.5, subd. (a); see *Lorenz v. Board of Medical Examiners* (1956) 46 Cal.2d 684, 687–688 [298 P.2d 537]; *PM & R Associates v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 357, 363 [94 Cal.Rptr.2d 887] (*PM & R Associates*).)

■ Specifically with regard to 805 reports, the Board has two sets of investigative duties and powers. First, it "shall investigate the circumstances underlying [an 805 report] within 30 days to determine if an interim suspension order or [a] temporary restraining order should be issued" and "otherwise provide timely disposition of [805 reports]." (§ 2220, subd. (a).) Second, the Board is statutorily required to investigate complaints that a physician "may be guilty of unprofessional conduct" (*ibid.*), which includes the "willful failure to file an 805 report by any person who is designated or otherwise required by law to file an 805 report" if that person is licensed by the Board (§ 805, subd. (k)). (See *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768 [117 Cal.Rptr.2d 445] [noting Board's authority to investigate unprofessional conduct by physician]; *Bradley v. Medical Board* (1997) 56 Cal.App.4th 445, 457 [65 Cal.Rptr.2d 483] (*Bradley*) [noting Board's obligation to investigate complaints that physician may be guilty of unprofessional conduct].)

Here, the filing of the 805 report concerning Dr. Petruzzo triggered the Board's investigative duties and powers. First, if Dr. Petruzzo is subject to the Board's regulation (see fn. 2, *ante*), the receipt of the 805 report obligated the Board to determine within 30 days whether to seek an interim suspension order or a temporary restraining order concerning Dr. Petruzzo's practice of medicine. (§ 2220, subd. (a).) The Board also had an obligation "timely" to dispose of the 805 report (*ibid.*) by, among other things, seeking an injunction against Dr. Petruzzo's practice of medicine if his practice would endanger the public (§ 2312; *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 639 [23 Cal.Rptr.3d 50]), and investigating the circumstances underlying the report to determine whether to refer the matter for formal disciplinary action against Dr. Petruzzo (§ 2230, subd. (a); *Arnett, supra*, 14 Cal.4th at p. 9). Second, because the conduct resulting in the restrictions on Dr. Petruzzo's radiology practice began in September 2007, but Dr. Flippin did not file the 805 report

until January 16, 2008, the report apparently was not filed within the statutorily required 15-day period. (§ 805, subd. (b)(3); see *Arnett*, at p. 11.) If Dr. Flippin willfully failed to file the 805 report in a timely manner, he would be guilty of unprofessional conduct and subject to a fine of up to $100,000. (§ 805, subd. (k); see *Arnett*, at p. 11.) The Board was thus statutorily authorized—indeed, obligated—to investigate the timeliness of the filing of the 805 report to determine whether Dr. Flippin had committed unprofessional conduct. (§ 2220, subd. (a); *Arnett*, at pp. 7–8; *Bradley, supra*, 56 Cal.App.4th at p. 457.) Further, with regard to Dr. Flippin's potential liability for unprofessional conduct, the Board's investigative authority is exclusive. (§§ 805, subd. (k), 2220.5, subd. (a); *PM & R Associates, supra*, 80 Cal.App.4th at p. 363.)

▇ We therefore hold the Board has jurisdiction to investigate the circumstances underlying the 805 report concerning Dr. Petruzzo. We further hold this jurisdiction includes the authority to investigate the timeliness of Dr. Flippin's filing of the 805 report.

### B. *Defendants' Arguments Against the Board's Jurisdiction Have No Merit*

In opposition to the Board's jurisdiction to investigate the timeliness and other circumstances of the 805 report at issue here, defendants offer two arguments, as noted above. (See p. 651, *ante*.) Neither is persuasive.

Defendants' primary argument on appeal is that the Board may only investigate individual physicians, not groups of physicians such as SCPMG. They contend the declaration of the Board's investigator supporting the petition and the captions of the subpoenas "make it clear that the investigation is focused on the group," which, according to defendants, is "not . . . a legitimate subject of investigative inquiry." We are not persuaded.

▇ As a purely statutory matter, the Board's investigative powers are not strictly confined to investigations of individual physicians. Section 2220 provides: "Except as otherwise provided by law, the [B]oard may take action against *all persons* guilty of violating this chapter [(i.e., the Medical Practice Act)]." (Italics added.) Under the Medical Practice Act, " 'Person' means any individual, partnership, corporation, limited liability company, or other organization, or any combination thereof, except that only natural persons shall be licensed under this chapter." (§ 2032.) The act also authorizes physicians to conduct medical practices in the form of a corporation, group or partnership. (§§ 2406, 2416; *Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1420–1421 [8 Cal.Rptr.3d 668].) It thus appears the Board would have power to investigate a group of physicians if, for example, the group constituted a partnership or corporation that was practicing medicine in a way that violated the Medical Practice Act.

To decide this appeal, however, we need not and do not decide whether the Board has jurisdiction to investigate a group of physicians such as SCPMG. Even if we assume for the purposes of argument that the Board has no such power, that would not deprive the Board of jurisdiction in this case. As we explained in part IIA., *ante*, the Board has jurisdiction to investigate Dr. Flippin, who is an individual physician (see fn. 2, *ante*).

■ The Board's jurisdiction to investigate Dr. Flippin is not defeated by the imprecise statement of the Board's investigator that her office "initiated a case against [SCPMG]" after receiving the untimely 805 report. Our Supreme Court has held that no formal accusation has to be filed and no formal adjudicative hearing needs to be pending before the Board may exercise its investigative powers. (*Arnett, supra*, 14 Cal.4th at p. 8; *Brovelli v. Superior Court* (1961) 56 Cal.2d 524, 528 [15 Cal.Rptr. 630, 364 P.2d 462] (*Brovelli*).) The Board "can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' " (*Brovelli*, at p. 529; accord, *Arnett*, at p. 8.) Hence, it seems to us the Board may call an investigation whatever it finds to be administratively convenient.

■ The references to an investigation of SCPMG in the captions of the investigative subpoenas also do not deprive the Board of jurisdiction. The caption, title, or label of a pleading or other document does not determine its nature or legal effect. (See, e.g., *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 711 [263 Cal.Rptr. 119, 780 P.2d 349] ["it is settled that the caption or title of a notice does not diminish its legal effect as a claim"]; *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 [46 Cal.Rptr.3d 408] ["The label given a petition, action or other pleading is not determinative . . . ."]; *Norman v. Berney* (1965) 235 Cal.App.2d 424, 430 [45 Cal.Rptr. 467] ["The title or designation of a complaint does not determine the character of the action."].) Rather, "it is what is contained in the [document] itself that is significant." (*Van Ruiten v. Van Ruiten* (1969) 268 Cal.App.2d 619, 626 [74 Cal.Rptr. 186].)

Here, the letters served with the investigative subpoenas were addressed to defendants and requested them to be prepared to testify "in regard to the [805 report] on Dr. Robert Petruzzo, Jr." Although defendants complain these letters were not parts of the subpoenas and did not notify Dr. Flippin that he was under investigation for untimely filing the 805 report, the subpoenas and accompanying letters form part of a single transaction and are to be read together. (See, e.g., *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814 [26 Cal.Rptr.3d 92]; *Heston v. Farmers Ins. Group* (1984) 160 Cal.App.3d 402, 417 [206 Cal.Rptr. 585].) Further, the petition alleges the subpoenas were issued to investigate Dr. Flippin's untimely filing of the 805 report, an "apparent violation" of section 805. These documents thus make clear the

investigation concerns a disciplinary matter that is within the Board's jurisdiction. (See §§ 805, subd. (k), 2220, subd. (a).) In determining a matter as important as jurisdiction, we decline defendants' invitation to exalt form over substance by focusing on the captions of the subpoenas, rather than on the subject matter of the Board's investigation. (See Civ. Code, § 3528 ["The law respects form less than substance."]; *McDonough v. Waxman* (1930) 103 Cal.App. 169, 173 [284 P. 482] [inclusion of erroneous information in caption of complaint did not require reversal of judgment and was of no importance because caption constituted no part of cause of action].)

Defendants next contend, without citing any supporting authority, that because an 805 report was in fact filed in this case, albeit after the 15-day deadline specified in subdivision (b) of section 805, the Board has no power to investigate Dr. Flippin's potential liability under section 805, subdivision (k). At oral argument, defendants' counsel insisted that, as used in section 805, subdivision (k), the phrase "failure to file an 805 report" means *total* failure to file an 805 report, *not* failure to file an 805 report *within the 15 days specified in section 805, subdivision (b).* When pressed by the court, counsel went so far as to assert that a physician facing disciplinary proceedings for not having filed an 805 report could escape discipline altogether simply by appearing at the hearing and submitting the report. We disagree.

■ We must interpret section 805 in a manner that promotes rather than defeats its purpose. (E.g., *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*); *Catholic Healthcare West v. California Ins. Guarantee Assn.* (2009) 178 Cal.App.4th 15, 31 [100 Cal.Rptr.3d 125].) The primary purpose of peer review is to protect the public by excluding from the practice of medicine those physicians who are incompetent, provide substandard care or engage in unprofessional conduct. (§ 809, subd. (a)(6); *Arnett, supra,* 14 Cal.4th at p. 12; *Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 600–601 [46 Cal.Rptr.2d 90].) To make peer review effective in protecting the public, the Legislature has required a peer review body that restricts or revokes a physician's staff privileges to file an 805 report with the Board. (§ 805, subd. (b); *Arnett,* at p. 11; *Bode v. Los Angeles Metropolitan Medical Center* (2009) 174 Cal.App.4th 1224, 1232–1233 [94 Cal.Rptr.3d 890].) The Board then must promptly investigate the circumstances underlying the 805 report to determine whether any immediate or long-term action against the physician is necessary for the protection of the public. (§ 2220, subd. (a).) Over the years, the Legislature has indicated the importance of timely filing and investigation of 805 reports by, among other things, increasing substantially the amount of the fine for not filing a required 805 report (Stats. 1990, ch. 1597, § 5, p. 7684 [increase from $1,200 to $10,000 for intentional failure to file]; Stats. 2001, ch. 614, § 2, p. 4956 [increase from $10,000 to $100,000 for willful failure to file]) and decreasing, from 30 days to 15 days, the time a peer review body

has to file an 805 report after it takes adverse action against a physician (Stats. 1993, ch. 1267, § 8, p. 7450). Indeed, in undertaking a "comprehensive overhaul of the physician discipline system" in 1990, which included amendments to section 805 (*People v. Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 385 [286 Cal.Rptr. 478]), the Legislature stated its intent was to give the Board "authority to act quickly in extreme cases . . . in the interests of protecting the people of California" (Stats. 1990, ch. 1597, § 1, p. 7683).

 In light of the above, it is clear the Legislature considers timely filing of 805 reports to be essential to the proper functioning of the peer review process and to the Board's ability to carry out its "highest priority" of exercising disciplinary authority to protect the public from incompetent, impaired, or unscrupulous physicians. (§§ 2001.1, 2229, subd. (a); see *Arnett, supra,* 14 Cal.4th at p. 7; *In re Stier* (2007) 152 Cal.App.4th 63, 79 [61 Cal.Rptr.3d 181].) Allowing late filers to go uninvestigated and undisciplined would defeat the purpose of requiring an 805 report to be filed with the Board within 15 days of the peer review action that necessitated the report. (See § 805, subd. (b).) We therefore reject defendants' contention the Board may only investigate a physician's total failure to file an 805 report, not a late filing. We instead hold, consistent with the purpose of section 805, that the untimely filing of an 805 report, if willful, may subject a physician required to file the report to liability under subdivision (k) of section 805, and that the Board has jurisdiction to investigate this potential liability as a form of unprofessional conduct. (See *Day, supra,* 25 Cal.4th at p. 276 [adopting construction of statute that "promotes, rather than defeats, its general purpose"].)

C. *The Trial Court Correctly Enforced the Investigative Subpoenas*

It remains for us to determine whether the challenged investigative subpoenas were validly issued by the Board and properly enforced by the trial court. For the reasons discussed below, we conclude they were.

 The Board may issue subpoenas as part of an investigation. The Medical Practice Act authorizes Board investigators to exercise powers delegated by the head of the Department of Consumer Affairs. (§ 2224, subd. (a); Gov. Code, § 11182; *Arnett, supra,* 14 Cal.4th at p. 8.) These delegated powers include the power to issue subpoenas for the attendance of witnesses and the taking of testimony in connection with an investigation. (Gov. Code, §§ 11180, 11181, subd. (e), 11182; *Arnett,* at p. 8.) Such subpoenas are valid in scope as long as (1) they inquire into matters the agency is authorized to investigate; (2) the request for information is "not too indefinite"; and (3) the information requested is "reasonably relevant" to the

investigation. (*Brovelli, supra*, 56 Cal.2d at p. 529; accord, *Board of Medical Quality Assurance v. Hazel Hawkins Memorial Hospital* (1982) 135 Cal.App.3d 561, 565 [185 Cal.Rptr. 405] (*Hazel Hawkins*).)

The investigative subpoenas challenged in this appeal satisfy this "three-fold test for subpoenas issued by administrative agencies." (*Hazel Hawkins, supra*, 135 Cal.App.3d at p. 565.) First, as we have explained, the Board is statutorily authorized to investigate the timeliness of the 805 report concerning Dr. Petruzzo. (See pt. IIA., *ante*.) Second, the subpoenas are "not too indefinite" (*Brovelli, supra*, 56 Cal.2d at p. 529) in that the accompanying letters served on defendants specified the information sought by advising them to be prepared to discuss the 805 report. Third, because Jones prepared the report and Dr. Flippin signed it, their testimony is "reasonably relevant" (*Brovelli*, at p. 529) to the Board's determination whether to take disciplinary action against Dr. Flippin based on the untimeliness of the 805 report. (See *Hazel Hawkins*, at p. 565 [information relevant to Board's decision whether to take disciplinary action against physician is proper subject of investigative subpoena].) Accordingly, the subpoenas were valid in scope.

 Finally, the investigative subpoenas were enforceable by the trial court. "The Board's subpoena power . . . is judicially enforced: in the event that its subpoena is disobeyed, the Board may petition the superior court for an order compelling compliance." (*Arnett, supra*, 14 Cal.4th at p. 8.) Trial courts are authorized to enforce investigative subpoenas that are "regularly issued." (Gov. Code, § 11188.) "The term 'regularly issued' means in accordance with the provisions of sections 11180, 11181, 11182, 11184 and 11185 of the Government Code providing for the matters which may be investigated, the acts authorized in connection with investigations, and the service of process." (*Fielder v. Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 39 [99 Cal.Rptr. 791] (*Fielder*).)

In compliance with these statutory provisions, the subpoenas directed to defendants (1) concern the timeliness of the 805 report, a matter within the Board's investigative jurisdiction (Gov. Code, § 11180, subds. (a), (b)); (2) command defendants to appear and give testimony at a location within San Diego County (*id.*, §§ 11181, subd. (e), 11185, subd. (a)); (3) were issued by a Board investigator exercising powers delegated by the head of the Department of Consumer Affairs (*id.*, § 11182; *Arnett, supra*, 14 Cal.4th at p. 8); and (4) were personally served on defendants (Gov. Code, § 11184, subd. (a)). Therefore, because the investigative subpoenas were "regularly issued," the trial court properly enforced them. (*Id.*, § 11188; see *Fielder, supra*, 23 Cal.App.3d at p. 39.)

## DISPOSITION

The order is affirmed.

Nares, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied December 21, 2011, and appellants' petition for review by the Supreme Court was denied March 14, 2012, S199316.