Filed 3/15/24  Estate of Delauter CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of Carole L. Delauter, Deceased. | |
| THOMAS DELAUTER,　　Plaintiff and Respondent,　v.　CHRISTOPHER PATRICK MALOHN DELAUTER,　　Objector and Appellant. | A163634　(Contra Costa County Super. Ct. No. MSP19-00811) |

In this probate proceeding, Christopher Patrick Malohn Delauter (Son) appeals following the trial court's judgment on his stepfather's spousal property petition and petition to probate the will of Son's mother.  We affirm.

BACKGROUND

Decedent Carole L. Delauter[1] died on December 13, 2016.  In June 2019, her surviving husband, respondent Thomas Delauter (Husband), filed a petition to probate Carole's will dated December 10, 2016 (First Will).  In the

_____

[1] To avoid confusion, we refer to the decedent by her first name.  No disrespect is intended.

First Will, Carole left "all my worldly possessions to my Husband & my youngest son," and named Husband as the executor. Husband also filed a spousal property petition, seeking a community property interest in certain real property (the Property).

In October 2019, Son, who is Carole's youngest son from a prior marriage, filed a will contest on the ground that Carole executed a subsequent will on December 12, 2016 (Second Will), which left all her possessions to Son and named him executor.[2] In December, Son filed an opposition to Husband's spousal property petition, arguing the Property was Carole's separate property, titled solely in her name and purchased before her marriage to Husband.

Over multiple days in January and February of 2021, the trial court held a consolidated trial on Son's will contest and Husband's spousal property petition.

In July 2021, the court issued a statement of decision. As to the will contest, the court found the First Will was executed in the presence of Husband and Son while Carole was hospitalized with throat cancer, after her substantial pain medications had been reduced to allow her to coherently discuss her treatment plan with her doctors. The Second Will was executed two days later while only Son was present, after Son prompted Husband and Carole's granddaughter to leave the hospital, and there was no evidence her pain medication had been reduced. The court found the Second Will was the product of undue influence and invalidated it; found the First Will valid; and ordered the estate distributed according to the terms of the First Will.

---

[2] Son also filed a petition to probate the Second Will. This petition was dismissed without prejudice. Son did not appeal this dismissal or file a new petition.

As to Husband's spousal property petition, the court found that, although title to the Property was in Carole's name and she purchased it before her marriage to Husband, she did not accrue significant equity before the marriage and community property paid for the entire mortgage as well as capital improvements made during the marriage. The court found Husband therefore held a 50 percent interest in the Property, and the First Will distributed Carole's 50 percent interest in the Property, and the court accordingly distributed the Property 75 percent to Husband and 25 percent to Son. Judgment subsequently issued.

DISCUSSION

I.     *Pretrial Order*

Son first challenges a January 2021 minute order, issued before trial began, granting Husband's petition for probate of the First Will and appointing Husband as executor. Son argues it was error for the trial court to issue the order before trial on his will contest.

As an initial matter, Son fails to demonstrate prejudice from any error. Trial began shortly after the January 2021 minute order issued and Son was not denied an evidentiary hearing on his will contest.[3]

In any event, as Husband argues, the January 2021 order was separately appealable. (Prob. Code,[4] § 1303, subds. (a)–(b) [order "[g]ranting . . . letters to a personal representative" or "[a]dmitting a will to probate" is appealable].) " 'The orders listed as appealable in the Probate Code must be

---

[3] We reject Son's suggestion that the outcome of trial was predetermined by the January 2021 minute order. The trial court's detailed factual findings indicate its careful consideration of the evidence presented at trial.

[4] All undesignated statutory references are to the Probate Code.

3

challenged timely or they become final and binding.' " (*Estate of Reed* (2017) 16 Cal.App.5th 1122, 1127.) Son did not timely appeal from this order and therefore may not challenge it now.

II.    *Undue Influence Finding*

Son argues the trial court erroneously found a presumption of undue influence applied to the Second Will. We reject the challenge.

In finding the Second Will to be the product of undue influence, the trial court reasoned, "a contesting party can claim a presumption of undue influence where there is (1) [a] confidential relationship between the decedent and the alleged undue influencer, (2) the alleged undue influencer was active in the procurement or execution of the Will, and (3) the alleged undue influencer unduly benefits from the Will."

The court cited section 21380 for this proposition. Section 21380, subdivision (a), sets forth a different test for finding a presumption of undue influence. (§ 21380, subd. (a) [presumption of undue influence where donative transfer made to certain enumerated persons, including "The person who drafted the instrument" and "A person who transcribed the instrument . . . and who was in a fiduciary relationship with the transferor when the instrument was transcribed"].) Son argues, and Husband properly agrees, that the section 21380 presumption does not apply here. (See § 21382 [with exceptions not relevant here, § 21380 does not apply to "a donative transfer to a person who is related by blood or affinity, within the fourth degree, to the transferor"].)

However, the factors identified by the trial court state the common law test for a presumption of undue influence. (*Estate of Sarabia* (1990) 221 Cal.App.3d 599, 605 ["The presumption of undue influence arises only if *all* of the following elements are shown: (1) the existence of a confidential

4

relationship between the testator and the person alleged to have exerted undue influence; (2) active participation by such person in the actual preparation or execution of the will, such conduct not being of a merely incidental nature; and (3) undue profit accruing to that person by virtue of the will."]; *Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1127 ["*Sarabia* describes the common law test for undue influence, and . . . addresses when a *presumption* of undue influence arises."].)  That the court cited the wrong authority for this presumption is immaterial.  (See *Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1192–1193 ["if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning"].)[5]

---

[5] For the first time in his reply brief, Son challenges the court's finding that the three prongs of the common law test were met.  Arguments made for the first time in a reply brief are forfeited.  (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 (*Tellez*).)  In any event, the challenge is unavailing.  Son does not dispute he had a confidential relationship with Carole, but simply asserts, with no citation to authority, that this "should not be held against him."  Son argues the trial court's finding that he was an active participant lacks substantial evidence, complaining primarily that the court erroneously excluded from evidence handwritten notes written by Carole during her hospitalization.  Assuming this exclusion was in error, Son fails to demonstrate prejudice.  As the court noted when excluding the notes, it had before it "a great deal of testimony" as to the content of the notes, which had been admitted without objection.  Further, most of the pages Son characterizes as conclusive were undated, and therefore were not conclusively written on the day the Second Will was executed.  Son argues the testimony of Carole's granddaughter about who told her she could leave the hospital the night the Second Will was executed was equivocal, but the granddaughter testified, "My uncle Chris [Son] assured me that it was okay [to leave the hospital].  He would take care of my grandmother, and I could go take a break."  Finally, with respect to the court's finding that Son unduly benefitted from the Second Will, Son points to a 2001 will executed by Carole and Husband naming Son as their sole beneficiary.  Husband testified this will was written before he and Carole took a trip to ensure that if they both

5

III.  *Jurisdiction to Issue July 2021 Statement of Decision*

Son argues the trial court lacked jurisdiction to issue the July 2021 statement of decision.  We disagree.

A.  *Additional Background*

On March 15, 2021, after trial concluded, the court issued a written order revoking the Second Will as the product of undue influence, ordering the estate distributed in accordance with the First Will, and dismissing Husband's spousal property petition as moot in light of the order validating the First Will.  The order was entitled, "Judgment of the Court." (Capitalization altered.)  Both parties filed requests for a statement of decision.

On April 5, 2021, the court issued an order entitled "Statement of Decision."  (Capitalization altered.)  Husband subsequently filed a motion to modify the statement of decision or for a new trial, arguing the spousal property petition was not moot because it would determine how much of the Property Carole could convey under the First Will.  Son filed objections to "the Court's Proposed Statement of Decision," and opposed Husband's motion as premature because judgment had not yet been entered.  The court overruled Son's objections because the April order "is the final Statement of Decision."

On July 28, 2021, following a hearing on Husband's motion, the court granted the motion to modify, granted Husband's spousal property petition, and issued a statement of decision titled "Modified Statement of Decision." (Capitalization altered.)

---

died, their property would pass to Son.  The existence of this prior will does not render the court's undue benefit finding lacking in substantial evidence.

6

B.     *Analysis*

Son argues the trial court lacked jurisdiction to issue the July 28 statement of decision because it issued more than 75 days after Husband's motion to modify or for a new trial.  As Son argues, under Code of Civil Procedure section 660, subdivision (c), "the power of the court to rule on a motion for a new trial shall expire . . . 75 days after the filing of the first notice of intention to move for a new trial," if notice of entry of judgment has not been given.

To resolve the challenge, we must first determine the nature of the multiple orders issued by the trial court.  Although the March 15 order was captioned as a judgment, the parties agree it did not constitute the judgment because they were entitled to request a statement of decision (Code Civ. Proc., § 632), which both subsequently did.  We agree.  The parties also agree the April 5 order was not the final statement of decision, despite the court's characterization, because the court was required to first issue a proposed statement of decision to which they could make objections.  (Cal. Rules of Court, rule 3.1590(f)–(g).)[6]  We again agree.

The parties' dispute centers on the nature of Husband's motion to modify the statement of decision or for a new trial.  Son argues the filing of the motion triggered the 75-day period in which the court could rule on it under Code of Civil Procedure section 660 and, because the July 28 statement of decision issued after this time elapsed, the order is invalid.  Husband

---

[6] In Husband's response brief on appeal, Husband argued that Son's opening brief did not contend the trial court erred in refusing to consider Son's objections to the April 5 proposed statement of decision, and that Son therefore forfeited such a claim.  In his reply brief, Son did not respond to this argument, contend the trial court so erred, or demonstrate he was prejudiced by any such error.  This issue is therefore not before us.

7

argues his motion should instead be construed as objections to the April 5 proposed statement of decision.

We agree with Husband. Parties have "statutory rights to object to the court's statement of decision." (*Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 140.) Thus, "[a] statement of decision issued by the court cannot automatically constitute a final decision for purposes of entry of judgment . . . because Code of Civil Procedure section 632 and California Rules of Court, [former] rule 232 contemplate that a court may amend its statement of decision after it receives objections from affected parties." (*Id.* at p. 141.) Because the April 5 order was a proposed statement of decision, Husband was statutorily entitled to file objections. That he captioned his objections as a motion to modify or for a new trial is not determinative. "The caption, title, or label of a pleading or other document does not determine its nature or legal effect. [Citations.] Rather, 'it is what is contained in the [document] itself that is significant.'" (*Stiger v. Flippin* (2011) 201 Cal.App.4th 646, 654.) Accordingly, Husband's filing is properly characterized as objections to the court's proposed statement of decision, and any statutory time periods associated with new trial motions were not triggered. The trial court had jurisdiction to issue the July 28 statement of decision.[7]

---

[7] For the first time in his reply brief, Son argues that even if the Code of Civil Procedure section 660 time period was not triggered by Husband's motion, the trial court had to file the judgment within 50 days after issuing the tentative decision pursuant to California Rules of Court rule 3.1590(l). Son has forfeited this belated argument and in any event provides no authority the deadline is jurisdictional; to the contrary, as Son acknowledges, the rule provides noncompliance may be excused for good cause. (*Id.*, rule 3.1590(m).)

IV.    *Spousal Property Petition*

Son challenges the trial court's order granting Husband's spousal property petition.  We reject the challenge.

The trial court determined that, even though Carole held sole title to the Property, "the entire Property was paid for with community property wages," and Husband therefore held a 50 percent interest in the Property under the *Moore/Marsden* rule.  "When community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property.  [Citations.] This well-established principle is known as 'the *Moore/Marsden* rule.' " (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421–1422.)  "[T]he rationale of the *Moore/Marsden* rule applies with equal force to capital improvements." (*Id.* at p. 1423.)

The court made extensive fact-findings on this issue.  Carole and her prior husband purchased the Property for $6,000 in 1975.  In 1978, Carole's prior husband transferred his interest in the Property to Carole and Carole executed a deed of trust securing a debt to her prior husband of nearly $9,000.  In 1979, Carole married Husband.  Based on these facts, the trial court found that "Carole did not accrue significant equity in the Property prior to her marriage to [Husband]."[8]

---

[8] In his opening brief, Son does not specifically challenge the trial court's finding that Carole did not accrue significant equity before marrying Husband, nor does he argue Husband should be allocated a less than 50 percent share in the Property to reflect any small equity accrued by Carole before their marriage.  To the extent Son raises any such challenges in his reply brief, they are forfeited.  (*Tellez, supra,* 240 Cal.App.4th at p. 1066 ["On appeal we need address only the points adequately raised by [appellant] in his opening brief on appeal."].)

9

After their marriage, Husband testified that he, Carole, and Carole's prior husband agreed Husband would take over the prior husband's child support obligations to pay off his contributions towards the purchase of the Property. Carole's 1978 debt to her prior husband was paid off in 1986, and in the same year Carole took out a new mortgage for nearly $14,000 to make improvements on the Property. Both mortgages were paid off with Husband's community property earnings. In 2008, Husband withdrew $90,000 from his retirement account to make additional improvements to the Property.

The court found, "[Husband's] wages paid for an estimated total of $22,968.40 of principal mortgage plus the accrued interest and $90,000.00 . . . spent towards capital improvements. This home was initially purchased for $6,000.00, with a mortgage that exceeded that amount when it was quitclaimed to Carole prior to her marriage to [Husband]. Based on these significant contributions, even if Carole had any equity in the property prior to marriage, under the Moore/Marsden Rule, [Husband] would receive the maximum 50% community property interest in the property. Thus, given that the entire Property was paid for with community property wages, [Husband] is entitled to a pro tanto reimbursement interest in the Property, which results in a maximum fifty percent (50%) interest in the Property, as the surviving spouse."

Son argues there is no competent evidence that community property was used to pay the mortgages. The claim fails. Son does not dispute that Husband was the primary income earner during the marriage, or that any income Carole earned was also community property. The only evidence of separate property obtained by Carole during the marriage that Son points to is an inheritance Carole received in the 1990s—after the first mortgage was

10

paid off—and which Husband testified Carole spent on a car and other personal items but not the mortgage. Ample admissible evidence supports the trial court's finding that the entire purchase price of the house and improvements were paid for with community property.

Son's argument that Husband was at most entitled to reimbursement, not transmutation, is also unavailing. The court found under the *Moore/Marsden* rule that the community had acquired an interest in the Property; and further found that, under the facts of this case, the interest acquired by the community was 100 percent. Substantial evidence supports this finding.

V. *Judicial Bias*

Son argues the trial court was biased against him in violation of his constitutional due process rights. As evidence of bias, Son points to rulings against him during the proceedings (some we have affirmed and the rest Son does not challenge on appeal), rebukes to Son's counsel during witness examination, and purported errors in the court's factual findings.

"[T]he due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found." (*People v. Freeman* (2010) 47 Cal.4th 993, 1005.) "Numerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) " '[O]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.' " (*People v. Snow*

11

(2003) 30 Cal.4th 43, 78.)  Son has failed to demonstrate a due process violation.[9]

## DISPOSITION

The judgment is affirmed.  Respondent shall recover his costs on appeal.

SIMONS, Acting P.J.

We concur.

BURNS, J.
CHOU, J.

(A163634)

---

[9] We therefore need not and do not decide whether the claim is forfeited, as Husband contends.  Son's request that the matter be remanded to a different bench officer is denied.